UNITED STATES of America

v.

Marc N. WHEELER, Ship's Serviceman
First Class (E–6), U.S. Navy.

NMCCA 200602348.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 2 Dec. 2005.

15 May 2008.

For Appellant: Capt Sridhar Kaza,
USMC.

For Appellee: Maj Brian Keller, USMC.

Before GEISER, Senior Judge, KELLY,
and COUCH, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

COUCH, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of conspiracy to commit larceny and larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921. The appellant was sentenced to confinement for five months, forfeiture of $500.00 pay per month for a period of 10 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant raises four assignments of error.[1] After carefully considering the rec-

---

1. I. The appellant has been denied appropriate appellate review because the record of trial is missing a verbatim transcript of an Article 39(a), UCMJ, session at which the military judge announced his findings on essential defense motions.

II. The military judge erred when, under MILITARY RULE OF EVIDENCE 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), he refused to allow the appellant to testify at trial regarding polygraph examinations the appellant took prior

ord of trial, the appellant's brief and assignment of errors, the Government's answer, and the appellant's reply, we conclude that there is merit in the appellant's second assignment of error and that his conviction must be set aside.

## Background

The appellant was charged with participating in a conspiracy to steal money from soda machines aboard the USS BELLEAU WOOD (LHA 3) during a deployment to the Western Pacific from June through December, 2002. At the time, the appellant was a storekeeper with the responsibility to update a computer accounting program known as "ROM II" that tracked financial transactions, including the price of soft drinks sold aboard ship. Another Sailor, Ship's Serviceman First Class (SH1) Shedrick D. Jones, was assigned as the "cash collection agent," whose responsibility was to remove all of the money from the soda machines and then account for the proceeds in cash record logbooks. The appellant was responsible for transferring information from the cash record logbooks into ROM II, but at no time did he handle any cash from the soda machines. An audit of the ship's accounting data after the deployment revealed over $10,000.00 missing from the cash account.

The appellant was interviewed by law enforcement agents several times regarding his knowledge of the missing money from the soda machines. On 23 October 2003, the appellant provided a detailed statement to the Naval Criminal Investigative Service (NCIS) explaining the ROM II software and denying any knowledge of the theft. Appellate Exhibits XXII and XXIII. On 18 May 2004, the appellant was questioned by agents working for the ship's Criminal Investigation Division (CID), and the appellant again denied complicity in the theft. AE XXI.

to making a statement to agents of the Naval Criminal Investigative Service (NCIS).
III. The military judge erred by denying the appellant's request for a polygraph expert.
IV. The military judge erred by denying the appellant's motion to suppress his confession to NCIS.

The appellant was stationed onboard USS PINCKNEY (DDG 91) on 23 September 2004, when he was directed by his command master chief to report to NCIS for another interview regarding the theft. Over a period of 10 hours, the appellant was questioned by Special Agent (SA) Meulenberg, and voluntarily submitted to four polygraph examinations.[2] AE IV; Record at 138–40. The appellant was informed after each of the first three tests that the results were "inconclusive." After the fourth test, the appellant was told that he was being "deceptive," which he understood to mean he had failed the polygraph test. The appellant was then confronted by SA Meulenberg who accused the appellant of lying. Record at 138–40.

The appellant testified that SA Meulenberg led him to believe that he would be convicted based upon the evidence of the failed polygraph. He further contends that SA Meulenberg told him if he admitted guilt, things would be easier for him, and that SA Meulenberg would be able to assist him. The appellant further testified that SA Meulenberg told him the results of the polygraph test would not be given to his command if he confessed to the crimes. *Id.* at 140–41.

SA Meulenberg testified that he did not tell the appellant he would be convicted at a court-martial based on the results of the polygraph, but he did tell the appellant that by making a statement and admitting guilt, SA Meulenberg would be able to make sure the appellant would have an opportunity to apologize and "look like a good person that made a one-time mistake[.]" *Id.* at 70. SA Meulenberg also testified that he never told the appellant the results of the polygraph would not be turned over to the appellant's command if he made a confession. *Id.* at 69–70. The appellant eventually signed a statement implicating SH1 Jones in the theft, and admitted personally receiving between

2. Whether the appellant actually took three or four polygraph examinations is unclear from the record. The NCIS polygraph log and the testimony of SA Meulenberg at the motion hearing both indicate three polygraphs. AE XII; Record at 68. However, during the trial on the merits, SA Meulenberg and the appellant both testified there were four polygraph examinations.

$5,000.00 and $6,000.00 of the stolen money.[3] Prosecution Exhibit 18.

The appellant's confession was the only direct evidence of his guilt introduced by the Government at trial.[4] The defense timely moved to suppress the confession as involuntary under RULE FOR COURTS-MARTIAL 906, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.). AE X. When this motion was denied, the defense moved *in limine* to permit the introduction of evidence related to his polygraph examinations. AE VIII.

### Polygraph Evidence

■ The appellant's motion *in limine* to allow evidence of his polygraph examinations focused on the circumstances surrounding the polygraph examinations and not on the specific results. *Id.* Specifically, the defense argued that "information about the polygraph would not be admitted to find truth or falsity" but rather as evidence "to show what may have motivated a false confession." Record at 174. It is abundantly clear from the record that the appellant did not seek to introduce evidence as to the scientific reliability or validity of polygraph examinations. On the contrary, the appellant argued that SA Meulenberg used the polygraph results as an investigative tool to convince the appellant that he was in serious trouble.

The prosecution opposed the defense motion, citing MILITARY RULE OF EVIDENCE 707(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), which provides: "Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence." While the prosecution acknowledged that the appellant has "a right to discuss the circumstances of an interrogation" under certain circumstances, the Government contended that permitting the appellant to testify regarding the polygraph

examinations would be prohibited under the rule. Record at 178–79. The prosecution also contended that if the court allowed the appellant to testify about the polygraph examinations, it should be permitted to present rebuttal evidence to include the testimony of the polygraph examiner and the actual results. AE IX at 5–6.

The military judge ruled that the polygraph evidence sought by the appellant was inadmissible under MIL. R. EVID. 707 and *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), and denied the defense motion *in limine* with the following rationale:

> [A]dmission of polygraph evidence to show its bearing upon the accused's state of mind presents a double-edged sword, inviting rebuttal evidence concerning the scientific reliability of the test and the specific test results in this case, including the fact that the accused apparently failed the last test. Traveling down such a road would invade the province of the fact-finder in making credibility assessments and require extensive examination into purely collateral matters. *See Scheffer*, 523 U.S. at 313, 118 S.Ct. 1261. Contrary to the defense assertion that the polygraph's reliability or its test results are wholly irrelevant in this case, the accused's decision to provide a statement to explain adverse tests results is probative only if he honestly believed that the test results were reliable or that others would likewise believe so. Delving into the questionable scientific reliability of the accused's polygraph exam and the proper interpretation of its results would be the natural corollary to the accused's assertion that the test influenced his decision to "confess" his culpability to Special Agent [Meulenberg].

Government Response to Court Order filed on 12 Feb 2008 producing CDR Redcliff's e-

---

3. SH1 Jones testified that he alone was responsible for the theft of the money from the soda machines, and that he did not conspire with the appellant. Record at 537–38.

4. In addition to the confession, the Government presented evidence that the appellant had knowledge of the amount of cash collected by the ship's cash collection agent and that he should

have noticed a significant shortfall; that the cash books were reporting sodas sold at 50 cents when they were actually being sold for 60 cents; that the USS BELLEAU WOOD was missing some amount of money in excess of $10,000.00; and that there were deposits to the appellant's checking account made from an ATM in Guam.

mail of 4 Aug 2005 at 2.[5] The military judge stated that he would not "limit the accused's right to present relevant evidence pertaining to other circumstances" related to his statement to NCIS, to include "a general reference to the accused's belief that [SA Meulenberg] had confronted him with evidence of guilt which the accused felt was inaccurate and compelled him to dispute by making an 'absurd' confession." *Id.*

We review a military judge's rulings on admissibility of evidence for an abuse of discretion, and that discretion is abused when evidence is admitted upon an erroneous view of the law. *United States v. Holt,* 58 M.J. 227, 230–31 (C.A.A.F.2003) (citations omitted). This is a strict standard requiring more than a mere difference of opinion. *United States v. McElhaney,* 54 M.J. 120, 130 (C.A.A.F.2000). In conducting our review, we are required to consider the evidence in the light most favorable to the prevailing party. *United States v. Reister,* 44 M.J. 409, 413 (C.A.A.F.1996). We conclude the military judge erred in denying the appellant's motion *in limine* because MIL. R. EVID. 707 is unconstitutional as applied to the narrow circumstances presented in this case.

In *Scheffer,* the appellant sought to introduce evidence of an exculpatory polygraph and the opinion of a polygraph expert in order to bolster the credibility of his "innocent ingestion" defense to the charge of wrongful use of methamphetamines. The trial judge, relying on MIL. R. EVID. 707, excluded all evidence concerning the polygraph and the defense's proposed polygraph expert. The case was affirmed by the Air Force Court of Criminal Appeals, but reversed by the Court of Appeals for the Armed Forces. Our superior court stated that a *per se* exclusion of polygraph evidence, offered by an accused to rebut an attack on his credibility, violated the appellant's right to present a defense under the Sixth Amendment to the U.S. Constitution. *United States v. Scheffer,* 44 M.J. 442, 445 (C.A.A.F. 1996).

The Supreme Court reversed, holding that MIL. R. EVID. 707 did not abridge the servicemember's right to present a defense. *Scheffer,* 523 U.S. at 317, 118 S.Ct. 1261. The Court held that, while a defendant has a Sixth Amendment right to present relevant evidence in his or her defense, that right "is subject to reasonable restrictions" imposed by state or federal rule makers in the form of rules excluding evidence from criminal trials. *Id.* at 308, 118 S.Ct. 1261. The Court went on to find that MIL. R. EVID. 707 "is a rational and proportional means of advancing the legitimate interest in barring unreliable evidence." *Id.* at 312, 118 S.Ct. 1261.

*Scheffer,* however, was a fractured decision with three separate opinions and shifting majorities. Writing for a four-justice plurality,[6] Justice Thomas found that Rule 707 serves three legitimate governmental interests "in ensuring that reliable evidence is presented to the trier of fact in a criminal trial." *Id.* at 309, 118 S.Ct. 1261. First, it helps exclude unreliable evidence, as reflected by the lack of consensus within the scientific community over the reliability of polygraph examinations, and in the doubtful approach to such evidence by state and federal courts. *Id.* at 309, 312, 118 S.Ct. 1261. Second, it helps preserve "the jury's core function of making credibility determinations in criminal trials" by not allowing polygraph evidence to cause "jurors to abandon their duty to assess credibility and guilt." *Id.* at 313–14, 118 S.Ct. 1261. Third, it helps "avoid[ ] litigation over issues other than the guilt or innocence of the accused." *Id.* at 315, 118 S.Ct. 1261.

Another four justices[7] agreed with the plurality's determination that Rule 707 is

**5.** We appreciate the military judge's efforts to keep this case moving along, and understand his use of e-mail to aid him in that effort. However, we caution all military judges that they must make all rulings of the court a part of the record, including factual issues involved in determining a motion. *See* R.C.M. 905(d). We will only give deference to the military judge's ruling when he or she indicates on the record an accurate understanding of the law and its application to the

relevant facts. *United States v. Briggs,* 64 M.J. 285, 287 (C.A.A.F.2007)(citing *United States v. Downing,* 56 M.J. 419, 422 (C.A.A.F.2002)).

**6.** Justices Thomas, Scalia, Souter, and Chief Justice Rehnquist.

**7.** Justices Kennedy, O'Connor, Ginsburg, and Breyer.

"not so arbitrary or disproportionate that it is unconstitutional." *Id.* at 318, 118 S.Ct. 1261 (Kennedy, J., concurring). However, they specifically disavowed legitimate governmental interests two and three, *supra,* that allowing polygraph evidence would impermissibly invade the province of the trier of fact, and the concerns of allowing such evidence would lead to litigation of collateral issues at trial. *Id.* at 318–20, 118 S.Ct. 1261. Moreover, these justices expressed "doubt ... that the rule of *per se* exclusion is wise," and observed that "some later case might present a more compelling case for introduction of the testimony than this one does." *Id.* at 318, 118 S.Ct. 1261. They also shared the view held by Justice Stevens, the lone dissenter, that "there is much inconsistency between the Government's extensive use of polygraphs to make vital security determinations and the argument it makes here, stressing the inaccuracy of these tests." *Id.*

Reconciling these opinions, it is clear that a majority of eight justices believed MIL. R. EVID. 707 was not unconstitutional as applied to the facts of Scheffer's case. Just as clearly, though, a different majority of five justices have left open the possibility that Rule 707 might be unconstitutional when applied to different facts. In light of these reservations, we decline to adopt the Justice Thomas' plurality view of Rule 707 as a *per se* exclusion of polygraph examinations in virtually all its possible applications. *See* Edward J. Imwinkelreid, *A Defense of the Right to Present Defense Expert Testimony: The Flaws in the Plurality Opinion in United States v. Scheffer,* 69 TENN. L.REV. 539, 543–44 (2002).

As the Supreme Court has observed, a confession of the accused is strong evidence, and the accused should be afforded ample opportunity to confront it:

> Confessions, even those that have been found to be voluntary, are not conclusive of guilt.... [S]tripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is

effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? *Crane v. Kentucky,* 476 U.S. 683, 689–90, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The accused's interest in confronting his confession is particularly significant, as it is the accused who is the target of any criminal prosecution. *Scheffer,* 523 U.S. at 315–16, 118 S.Ct. 1261 (citing *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). To protect this interest, an accused "ought to be allowed 'to present his own version of events in his own words.'" *Id.* It is with this significant interest in mind that we consider whether the military judge erred by denying the appellant the ability to testify regarding the polygraph examinations.

As predicted by Justice Kennedy in his concurrence, the Court's holding in *Scheffer* does not address the situation we have in the present case. The military judge's application of Rule 707 clearly prevented the appellant from presenting factual matters—the numerous polygraph examinations and the polygraph examiner's characterizations of the results—which are extremely relevant in explaining the *res gestae* of his subsequent confession. Unlike the accused in *Scheffer,* the appellant was unable to testify himself about all relevant factual matters related to the polygraphs that led to his confession, and he did not attempt to bolster his own credibility by introducing an exculpatory polygraph and a polygraph expert to explain the results. Because the net effect of the military judge's application of Rule 707 prevented the appellant from testifying regarding this matter in his own behalf, we find it was "disproportionate to the purposes [the rule was] designed to serve." *Id.* at 308, 118 S.Ct. 1261 (quoting *Rock,* 483 U.S. at 56, 107 S.Ct. 2704). To the contrary, the military judge's application of the rule "infringed upon a weighty interest of the accused": his ability to testify in his own defense. *Id.* (citations omitted).[8]

8. In light of our determination that the appellant's weighty interest in testifying in his own behalf was infringed upon, we leave for another day the determination of whether the appellant should have been provided with expert assistance regarding polygraphs, or whether the military judge should have allowed the actual results of the polygraph into evidence. For the moment

Our review of the record reveals the military judge's primary rationale for preventing admission of the polygraph evidence was based upon his concerns about the reliability of the evidence, and that the rebuttal evidence proffered by the Government would precipitate a "trial within a trial," if the appellant was allowed to attack the voluntariness of his confession by referencing the polygraph examinations. While we appreciate these concerns of the military judge related to the unreliability of polygraph examinations, it remains that a "legitimate interest in barring unreliable evidence does not extend to *per se* exclusions [of evidence] that may be reliable in an individual case." *Rock*, 483 U.S. at 61, 107 S.Ct. 2704. Likewise, one court has recognized an exception to Rule 707's general exclusion when polygraph evidence is sought to be admitted by the prosecution to rebut an appellant's challenge to "the voluntariness of his admissions to the investigators." *United States v. Kawai*, 63 M.J. 591, 596 (A.F.Ct.Crim.App.2006)(citing *United States v. Gaines*, 20 M.J. 668, 669 (A.F.C.M.R.1985)).

In *Gaines*, the accused sought to prohibit the Government from introducing evidence he had failed a polygraph examination, offered as rebuttal evidence to his claim that his confession was involuntary. Our sister court upheld the military judge's denial of the appellant's motion *in limine*, ruling that an exception exists for "the testimony of a polygraph examiner where the purpose of the testimony is to show the voluntariness of the accused's confession which followed the examination, rather than to reflect the truthfulness of the statements made to the examiner." *Gaines*, 20 M.J. at 669 (citations omitted). The court reasoned that, assuming proper limiting instructions were given, "[t]he general philosophy supporting such an admission is that it is important for the jury to weigh every motivating circumstance surrounding the eliciting of a confession and that this function outweighs the importance

we are content, by way of analogy, to apply the same rationale as is behind the admissibility of "state of mind" hearsay under Mɪʟ. R. Evɪᴅ. 803(3): the evidence is not offered for "the truth

of any possible prejudice from a reference to its use." *Id.*

For the same reasons, we view this case as a situation "in which taking a polygraph test and discussing the results with a suspect may be logically quite relevant in determining whether the suspect's subsequent statement to investigators was voluntary." *United States v. Clark*, 53 M.J. 280, 284 (C.A.A.F.2000)(Everett, C.J., concurring in the result). The Government obtained the appellant's confession after employing a series of polygraph examinations as an investigatory tool. Under these circumstances, the appellant's understanding and perception of those polygraph examinations are important factual matters related to his confession. Even though the appellant was unsuccessful in suppressing his confession, he still had the right "to present relevant evidence with respect to the voluntariness of the statement" during the trial on the merits. Mɪʟ. R. Evɪᴅ. 304(e)(2). *See* Major Scott E. Reid, *Military Rule of Evidence 707 and the Art of Post–Polygraph Interrogation: A Proposed Amendment to the Blanket Exclusionary Rule*, 2001 Aʀᴍʏ Lᴀw. 1, 5 (2001). Therefore, we hold that the appellant was denied this right when the military judge prohibited him from presenting factual evidence, relevant to his statement's voluntariness and credibility, in the form of his own testimony regarding the polygraph examinations.

■ Considering the strengths of the Government and defense cases, and the materiality and quality of the evidence in question, we find the appellant was prejudiced by the military judge's decision. *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F.1999) (citations omitted). Given the constitutional interests at stake when an accused is prohibited from testifying in his own defense, we do not believe the military judge's error was harmless beyond a reasonable doubt. *United States v. Buenaventura*, 45 M.J. 72, 79 (C.A.A.F.1996) (citations omitted).

of the matter asserted," but rather to show the declarant's state of mind when he made his confession.

### Conclusion

The findings of guilty and the sentence are set aside. The appellant's remaining assignments of error are thereby rendered moot. The record is returned to the Judge Advocate General for remand to an appropriate convening authority who may order a rehearing.

Senior Judge GEISER and Judge KELLY concur.