CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLE
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Specialist JASON A. KOHLBEK**
**United States Army, Appellee**

ARMY 20160427

Headquarters, Fort Stewart
John S. Irgens, Military Judge
Colonel Luis O. Rodriguez, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA[1]; Barry P. Steinberg, Esquire (argued); Lieutenant Colonel Melissa R. Covolesky, JA; Lieutenant Colonel Christopher D. Carrier, JA; Captain Katherine DePaul, JA; Captain Cody Cheek, JA; Barry P. Steinberg, Esquire (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Barry P. Steinberg, Esquire (Petition for New Trial and reply brief to Petition for New Trial).

For Appellee: Captain Cassandra M. Resposo, JA (argued); Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (response to Petition for New Trial).

12 April 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Specialist Jason A. Kohlbeck appeals his conviction of three specifications of sexual abuse of a child and one specification of communicating indecent language to

---

[1] Corrected.

a child.[2]  In his judge alone trial, appellant was sentenced to a bad-conduct discharge, confinement for fifteen months, and a reduction to the grade of E-1.[3]

This appeal centers on statements made by appellant after he had been administered a polygraph test.  Appellant first complains that the military judge should have suppressed the statements as being unreliable.  Second, the appellant alleges that the military judge erred when he did not allow appellant to tell the court-martial that his admissions only came after he was administered a polygraph.  Third we address appellant's claim that the evidence is legally and factually insufficient.[4]

Our review of these assignments of error is complicated by the unique circumstances of the case.  First, with regard to three of the offenses, appellant entered an unconditional guilty plea to the conduct in question as a violation of Article 128, UCMJ.  The government then proved the greater offenses as charged.  Second, during the contested portion of the trial appellant did not directly challenge the reliability of his confession.  Indeed, the defense counsel appeared to present the defense case under the assumption that the military judge would consider appellant's statements during the *Care*[5] inquiry and suppression motion when weighing the evidence of appellant's guilt.

We find no error and therefore affirm the findings and the sentence.

## BACKGROUND

Miss AH was the fourteen-year-old friend of appellant's daughter.  On the night of 19 September 2015, Miss AH was staying at appellant's house in his daughter's room.  Early in the morning of 20 September, appellant entered his daughter's room where Miss AH was sleeping on the floor.  Appellant laid down next to Miss AH and nibbled her ear, grabbed her breast and then her buttocks, and whispered in her ear, "Do you want me?"

Miss AH reported appellant's actions to her father that night.  A law enforcement investigation immediately followed.

---

[2] Appellant was convicted of violating Articles 120b and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920b, 934 (2012).

[3] We heard oral argument on 22 February 2018.

[4] We do not directly address appellant's petition for a new trial or his claim that the offenses are unreasonably multiplied.  We conclude that neither warrant relief.

[5] *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

All four offenses were charged as violations of Article 120b, UCMJ. All four specifications required proof that appellant committed the act with a specific intent (e.g. the intent to gratify his sexual desire).

At trial and on appeal, appellant claimed that he was too drunk to form the specific intent necessary to commit the offense. While appellant did not dispute that he committed the *actus reus* of each offense, appellant denied that he was guilty of an Article 120b, UCMJ, violation because he claimed he was too intoxicated to form the *mens rea* necessary to commit the offense.

Based on his claim of a lack of memory, appellant entered an unconditional guilty plea, by exceptions and substitutions, to three specifications of assault consummated by battery. In the *Care* inquiry, while disavowing any memory of the offenses, appellant admitted facts necessary for the military judge to accept his pleas. Appellant told the military judge that after having reviewed all the evidence against him, he was convinced that he had nibbled Miss AH's ear, grabbed her breast and buttocks, and asked her, "Do you want me?".

## A. *The Statement*

After waiving his rights under Article 31, UCMJ, appellant made an initial statement to law enforcement. Appellant then agreed to take a polygraph. The polygraph took about four hours. After being told that his answers were deceptive, appellant wrote a detailed sworn statement in which he admitted key incriminating facts, including: after graduating from the Warrior Leader Course, appellant was drinking with friends at his home; appellant's stepdaughter and her friend, Miss AH, were at the house and made cookies; while making cookies Miss AH was "flirting and giggling" with him and his friends (appellant clarified that she was giving everyone a "pouty look" and would then giggle); appellant went into his daughter's room and laid down next to Miss AH; appellant woke up with his hand "up [AH's] shirt." The statement included the following questions and answers:

> Q: What was [AH] doing when you got into the room?
>
> A: She was laying down and I think she was asleep.
>
> . . .
>
> Q: Earlier you mentioned that when your hand was in [AH]'s shirt you asked, "Do you want me?" Is that right?
>
> A: Yes.
>
> Q: So, you were aware you put your hand in her shirt?

> A: Yes, my hand was under her shirt and I rubbed my hand up.
>
> . . .
>
> Q: What was your intent when you asked her [Do you want me?]?
>
> A: [S]exual.

As mentioned above, appellant entered an unconditional guilty plea to three specifications of touching Miss AH in violation of Article 128, UCMJ. At the contested portion of his trial the key issue was whether appellant touched Miss AH with a sexual intent. Appellant's confession, especially in light of the corroborating testimony of Miss AH, was significant proof of his intent.

Appellant filed two motions regarding his post-polygraph statement. The first motion argued that his statement should be suppressed under Military Rule of Evidence [Mil. R. Evid.] 403 because the probative value of the statement was substantially outweighed by the danger of unfair prejudice.[6] The second motion, which was filed in the alternative, argued that if his post-polygraph statement was admissible, then he had a constitutional right to tell the court-martial about the circumstances under which his statement was made. Essentially, appellant argued that Mil. R. Evid. 707, which prohibits any evidence regarding a polygraph test, was unconstitutional as applied in this case.

## B. The Suppression Motion

Both appellant and the polygrapher testified at the motion hearing. Both agreed that appellant had told the polygrapher that appellant had no memory of the evening. Both also agreed that the polygrapher explained that for the polygraph test to work he needed yes or no answers to questions.

Appellant testified that he was very uncomfortable during the test. He claimed his arm was turning purple because of a blood pressure cuff and that he had hip pain that was "extreme." However, he continued to agree to participate because he "felt [he] had nothing to hide" and he "wanted to show that [he] was being honest and truthful." When the test was over, (and after appellant was no longer hooked up to the polygraph), the polygrapher told appellant that the test indicated he was being deceptive and that he was hiding something. Appellant stated that after talking for

---

[6] The motion also claimed that the statement was involuntary. Appellant made his statement after waiving his Article 31(b), UCMJ, rights. Appellant does not reassert this issue on appeal and we find the military judge was well within his discretion in denying the defense suppression motion on this basis.

twenty- to twenty-five minutes, he told the agent "Fine. I did it. I will write whatever you want. I'll write a sworn statement to it. Just get me out of here." Appellant testified that he then was left alone to write the narrative portion of the sworn statement, which was then followed by a question and answer section.

## LAW AND DISCUSSION

### A. Was appellant's post-polygraph statement more unfairly prejudicial than probative?

At the suppression hearing and on appeal there are two competing factual theories about how appellant came to write a statement in which he admitted key inculpatory facts. Appellant claims that he has never had any memory of committing the offenses, and that his confession is false. The alternative claim is that appellant's asserted lack of memory is false and that his confession correctly admits his conduct.

Although the military judge denied the Mil. R. Evid. 403 motion, he did not specifically put his reasoning on the record. Nonetheless, it is clear to us that the military judge did not err. Appellant's assessment of the Mil. R. Evid. 403 balancing test depends entirely on the factfinder crediting his version of events. That is, appellant's rationale for finding his post-polygraph statement to be unfairly prejudicial depends entirely on accepting his testimony that he had no memory of the offense. Our superior court has explicitly rejected "'weed[ing] out' evidence" under Mil. R. Evid. 403 based on the military judge's assessment of credibility. *United States v. Gonzalez*, 16 M.J. 58, 60 (C.M.A. 1983) (stating that such a ruling would "usurp the function of the factfinder"); *see generally United States v. Banker*, 60 M.J. 216, 224 (C.A.A.F. 2004) (in the context of Mil. R. Evid. 412, "the judge correctly identified credibility as an issue for the members"). The military judge correctly determined that credibility determination should be left for the factfinder.

### B. Should appellant have been permitted to tell the court-martial about the polygraph?

Military Rule of Evidence 707 prohibits the admission of the results of a polygraph as well as any "reference to an offer to take, failure to take, or taking of a polygraph examination."

Appellant argues that the military judge erred in prohibiting him from telling the court-martial that his admissions were made after being subjected to a polygraph and being told his answers were deceptive. As Mil. R. Evid. 707 clearly prohibits this information, appellant argues that the rule is unconstitutional, at least as applied to his case. Appellant argues that being deprived of this information misled the factfinder about the circumstances under which he confessed.

Indeed, our sister court at the Navy Yard has provided some support for appellant. In *United States v. Wheeler*, the accused filed a "motion *in limine* to allow evidence of his polygraph examinations focused on the circumstances surrounding the polygraph examinations and not on the specific results." 66 M.J. 590, 592 (N.M. Ct. Crim. App. 2008). The court held that the accused in *Wheeler* "was denied this right when the military judge prohibited him from presenting factual evidence, relevant to his statement's voluntariness and credibility, in the form of his own testimony regarding the polygraph examinations." *Id.* at 595.

Importantly, neither appellant in this case, nor the accused in *Wheeler,* sought to introduce the results of the polygraph examination for their truth. Military Rule of Evidence 707, and as specifically affirmed by the Supreme Court in *United States v. Scheffer,* 523 U.S. 303 (1998), completely bars the admissibility of polygraph test results. Certainly, nothing in this opinion should be interpreted as challenging that prohibition. Rather, today we address the unusual circumstance where an accused wants to tell the court-martial that he "*failed*" the polygraph. Indeed, it is certain that the accused in *Wheeler* (and the appellant here) did not want the court-martial to *credit* the results of the test. Rather, the accused in *Wheeler* wanted to explain to his court-martial the circumstances that lead to his confession.

> [T]he appellant's understanding and perception of those polygraph examinations are important factual matters related to his confession. Even though the appellant was unsuccessful in suppressing his confession, he still had the right to present relevant evidence with respect to the voluntariness of the statement during the trial on the merits.

66 M.J. at 595 (quotations omitted).

We need not decide today whether or to what extent we would follow *Wheeler*. There may be a circumstance where prohibiting an accused from explaining the circumstances that led to his confession deprive him of due process or amounts to a deprivation of his constitutional right to testify in his defense. In this case, however, the defense failed to provide the factual basis to support such a claim.

As an initial step in our analysis, we consider the range of permissible evidence and testimony that was unaffected by Mil. R. Evid. 707's prohibitions on polygraph evidence. Military Rule of Evidence 707 did not prohibit appellant from attempting to undermine the reliability of his statement by telling the court-martial about his age, education, intelligence, or life experience. The rule did not prohibit appellant from explaining the length of his interview, his amount of sleep, or whether he was provided adequate food and rest breaks. Nor did the rule prohibit him from testifying (as he did in the suppression motion) that he was in severe pain

during the interrogation. Military Rule of Evidence 707 did not prohibit appellant from telling the court-martial that: his interrogator told him that he was lying; he was told he was prohibited from claiming a lack of memory; or he must answer questions "yes" or "no." Finally, the rule did not prohibit appellant from testifying, consistent with his suppression motion testimony, that he confessed because he wanted to end the interrogation and did not think he would be allowed to leave until he gave law enforcement what they wanted.

Instead, Mil. R. Evid. 707 operated to prohibit appellant from putting on two types of evidence. First, appellant was prohibited from telling the court-martial that he had taken a polygraph. Second, appellant was prohibited from explaining to the court-martial the *effect* that having taken a polygraph (and being told he had been deceptive) had on his decision to make admissions. It is the latter of these two that is important. That appellant took a polygraph is irrelevant unless it has a logical connection to appellant's decision to make admissions. Put differently, evidence regarding the polygraph was only conditionally relevant. It was logically relevant only to the extent it affected his decision to confess.

Appellant testified at the suppression motion that he confessed because he wanted to end the interview as soon as possible. Appellant never directly claimed that his decision to confess was related to being told the polygraph results. Appellant made his post-polygraph statement after the test was completed, and after a twenty- to twenty-five minute interview. Military Rule of Evidence 707 did not prohibit appellant from testifying that he confessed because he wanted to leave.

Critically, appellant's stated explanation for confessing, (wanting to end the interrogation), did not require disclosure of the polygraph testing. Or at least, evidence that appellant took a polygraph was only tangentially relevant to appellant's proffered explanation for allegedly signing a false confession. Nothing in Mil. R. Evid. 707 prohibited appellant from testifying at trial that he falsely confessed because he wanted to end the interview. While appellant's post-hoc arguments on appeal could implicate the reasoning in *Wheeler*, we are limited to the factual record as developed at trial.

In other words, appellant did not specifically explain during the suppression motion how the polygraph itself was the basis for his decision to falsely confess. Yes, he did testify that the circumstances surrounding the polygraph test contributed to his allegedly false confession. However, those circumstances (e.g. his claim of hip pain) were not barred by Mil. R. Evid. 707. By contrast, the constitutional issue would be more squarely before us had appellant testified that he falsely confessed only because he *believed* the inculpatory polygraph result must be right when he gave his answer. (E.g. "if the machine says my answers are wrong, then the opposite of my answers must be the truth"). In such a case, the constitutional question is not whether the accused can admit the polygraph results for their accuracy (which is

7

clearly prohibited) but rather whether Mil. R. Evid. 707 can operate to bar an appellant from explaining the voluntariness and reliability of his statement.

Accordingly, we hold that Mil. R. Evid. 707 was not unconstitutionally applied in appellant's case.

*C. Factual Sufficiency*

As discussed above, appellant pleaded guilty to three specifications of assault consummated by battery. A contested trial then occurred as the government attempted to prove the sexual offenses as they had been charged. The contested portion of the trial focused on whether appellant was too drunk to form the specific intent to gratify his lust when he, e.g., nibbled on AH's ear and grabbed her breast and buttocks.

In his brief, appellant argues that someone who is drunk to the point of blacking out cannot form the specific intent to commit an offense. We think this likely incorrect. Evidence that someone is blackout drunk is certainly evidence that the person is highly intoxicated. However, we reject a per se conclusion such a person cannot form a specific intent to gratify sexual desire. During the contested portion of the trial, which is the part of the trial we are concerned with in our factual sufficiency review, there was overwhelming evidence that appellant formed the required intent.

Here, the acts themselves belie an obvious specific sexual intent. Miss AH testified, consistent with appellant's admitted confession, that appellant touched her breast under her bra and then moved his hand to her pelvic area and touched her buttocks. She said appellant nibbled on her ear for over a minute, that she couldn't leave because he was holding her back, and that appellant said to her, "Do you want me?" It is hard to attribute appellant's actions to anything other than the specific intent to gratify his sexual desire.

Appellant did not testify or offer direct evidence that he was in a blackout or that he was too drunk to form a specific intent. An accused's intent may nonetheless be proven by circumstantial evidence. *See* Dep't of Army, Pam 27-9, Legal Services, Military Judges' Benchbook, para. 7-3 n.2 (10 Sep. 2014).

Several witnesses testified about appellant's pre- and post-offense drunken demeanor. Appellant was described as leaning against walls and slurring his speech. The defense also elicited that a military police officer had heard that appellant's blood alcohol level was 0.165. The defense called an expert witness who testified that blackouts do not occur below a blood alcohol level of 0.15 but can, depending on the person, occur above that level. The expert further opined that appellant's blood alcohol level was around 0.21 at the time of the offense.

8

But, appellant's own expert agreed that persons in a blackout state can still form specific intents. Thus, even assuming that there was sufficient circumstantial evidence to infer appellant was blacked out, this would not directly answer the question of whether appellant was so drunk as to be unable to form a specific intent.

After having reviewed the entire record, we find the evidence legally and factually sufficient in all regards.[7]

---

[7] We note one final issue regarding the sufficiency of the evidence during the contested portion of the trial.

During the case on the merits, appellant's defense counsel appears to have believed that appellant's statements made during the *Care* inquiry would be considered by the court-martial in determining appellant's guilt to the contested offenses. For example, the defense counsel moved to admit evidence in reliance on the presumption that appellant's *Care* inquiry statements were part of the evidentiary record. In responding to a government objection, the defense made the following argument: "The defense position on that is that [] a statement that has been taken, has been entered into evidence in this trial, [and] will be considered by Your Honor during deliberations. . . ." The defense counsel further argued that the *Care* inquiry "is evidence that will be considered by Your Honor on the merits." In the closing argument, the defense counsel likewise referred to facts and "evidence" that had been introduced during the *Care* inquiry but had not been introduced during the contested portion of the trial. The military judge did not correct the defense counsel.

However, we see no error warranting relief for several reasons.

First, appellant never specifically moved to have his *Care* statements admitted during the contested portion of the trial. Accordingly, we need not decide whether Mil. R. Evid. 410, which prohibits admitting *Care* inquiry statements "against" the accused is applicable in light of our superior court's case law that has specifically stated an intent to not apply the rule strictly. *United States v. Barunas*, 23 M.J. 71, 76 (C.M.A. 1986) (Judge Sullivan argued for "enforce[ing] the military expansion of the rule" and against "[a]n excessively formalistic or technical approach to [Mil. R. Evid. 410]"); *United States v. Anderson*, 55 M.J. 182, 184 (C.A.A.F. 2001) ("Accordingly, we apply the broad interpretation of Mil. R. Evid. 410 adopted in [*United States v. Vasquez*, 54 M.J. 303, 304 (C.A.A.F. 2001)] as necessary to carry out the policy underlying the Rule"); *United States v. Grijalva,* 55 M.J. 223, 228 (C.A.A.F. 2001). Nor need we address whether the defense admitting an accused's statements from a *Care* inquiry during the merits portion of the trial is hearsay. *See* Mil. R. Evid. 801(c)(1) (definition of hearsay does not include testimony made "at the current trial").

(continued . . .)

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)
Second, we invited appellant to file a supplemental assignment of error if he determined that a claim of ineffective assistance was warranted.  Appellant declined.