# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and SALUSSOLIA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DAVID N. MUNOZ**
**United States Army, Appellant**

ARMY 20180670

Headquarters, National Training Center and Fort Irwin
Michael S. Devine and Craig S. Denney, Military Judges
Lieutenant Colonel Philip M. Staten, Staff Judge Advocate

For Appellant: Major Benjamin A. Accinelli, JA; William E. Cassara, Esquire (on brief); Captain Catherine Godfrey, JA; William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Captain Christopher T. Leighton, JA (on brief).

21 October 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2016) [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for fifteen years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.[1]

---

[1] Consistent with appellant's plea, the panel found appellant not guilty of one specification of false official statement, in violation of Article 107, UCMJ.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises six assignments of error, two of which merit discussion, but no relief.

## BACKGROUND

### A. Events Leading to the Charges

On 13 December 2017, appellant and Private First Class (PFC) BS connected via social media and agreed to watch a movie in her barracks room that night.[2] Shortly after the movie began, appellant joined PFC BS on her bed, asked her to cuddle, and began fondling her. He then kissed her, moved on top of her, and removed his pants. As appellant attempted to kiss her again, she said she didn't want to. She also told him "we could be friends, but that's not why I invited you here."

Appellant complained that his "boner wouldn't go away" and eventually "suggested that he would just finish himself." Appellant began masturbating on PFC BS's bed and refused to go into the bathroom as she requested. Private First Class BS provided appellant a sock to masturbate in and then sat in a chair as appellant masturbated. Appellant repeatedly asked PFC BS to "spit on" his penis, "touch" it, and "show him things." She refused each request. When PFC BS stood up, appellant pulled her towards him and groped her breast and buttocks in a forceful and painful manner.

Appellant then pulled down PFC BS's pants and underwear despite her efforts to resist. Appellant inserted his finger into her vagina as he continued to masturbate. Appellant then stood up, got behind PFC BS, grabbed her hand and placed it on his penis. She turned around and again told him that she "didn't want to," to which he replied, "we're not going to do it." Nevertheless, a few seconds later, appellant turned around, told her to get on the bed, and pushed her down on "all fours." When PFS BS fell on the bed after appellant pushed her, appellant inserted his penis into her vagina and began engaging in "aggressive" sexual intercourse with her. Private First Class BS described feeling scared, confused and helpless, and believed appellant would not stop until he was finished. Appellant then spit on her anus and inserted his thumb into it without warning. Reacting to the pain, PFC BS pushed appellant's hand away. Once appellant finished sexually assaulting PFC BS, he ejaculated into the sock he previously used to masturbate, dressed himself, and stated he was leaving. Private First Class BS also got dressed and then walked him to the stairwell. A few minutes after appellant's departure, he

---

[2] At the time of the charged incidents, appellant was married to another soldier.

messaged PFC BS stating, "You're cool. Don't make what happened weird between us. Like you said, we can be friends."

At the following morning's formation, a fellow soldier, Specialist (SPC) MP, noted PFC BS's depressed demeanor and asked whether anything happened to her. Crying at this point, PFC BS responded "that [she] was raped." Private First Class BS departed on leave the same day, returning home for the winter holidays. While home, PFC BS's mother noticed her daughter was not acting as her usual self and asked her what was wrong. She responded to her mother by asking "if she could go to Planned Parenthood and that she was raped." Sometime during her leave, PFC BS also told her best friend that she "was raped." Upon her return from leave, PFC BS reported that she had been sexual assaulted by appellant.

### B. Appellant's Statements to CID

After PFC BS reported the sexual assaults, the Army Criminal Investigation Command (CID) interviewed appellant. At the first interview, on 10 January 2018, appellant waived his rights and admitted to Special Agent (SA) BK that he and PFC BS engaged in sexual activities, to include sexual intercourse, and that he stopped every time PFC BS asked him to stop.

At a subsequent CID interview on 25 January 2018, appellant again waived his rights, consented to a polygraph examination, underwent pre- and post-polygraph interviews by SA AH, and provided a sworn statement. In appellant's post-polygraph interview and sworn statement, he made various admissions regarding the sexual activity being nonconsensual in that PFC BS said "no" several times. Appellant also drew a picture depicting where the sexual assaults occurred in the barracks room. Appellant then wrote an apology letter to PFC BS, stating in pertinent part:

> I'm really sorry for that night. I shouldn't have gone over or even talked to you with the kind of mindset I had. . . . I don't know what I was thinking to be honest. Everyone knows that "no" means "no." That [sic] where I fucked up also, I'm really sorry I put you in that spot or made you feel you were forced to do anything.

### C. Pretrial Motions

In preparation for trial, appellant's defense counsel requested the convening authority to appoint an expert consultant in the field of psychology, with special experience and training in the field of suggestibility and coerced confessions. After the convening authority denied the request, the defense filed a motion to compel the appointment of an expert. After considering the evidence presented and the

pleadings of the parties, the military judge issued a written ruling denying the motion. In denying the motion, the military judge made detailed findings of fact and conclusions of law. The military judge found the defense had not met its burden to demonstrate either the necessity of the requested assistance or why the defense was unable to gather and present the needed evidence without expert assistance. He also found the defense failed to establish that a fundamentally unfair trial would result if expert assistance was not granted.

Defense counsel also submitted a written motion in limine to present the video of the polygraph (polygraph video) in order to explain appellant's state of mind during his post-polygraph statement. In support of the motion, the defense relied on *United States v. Wheeler*, 66 M.J. 590 (N.M. Ct. Crim. App. 2008), and focused on the circumstances surrounding the polygraph examination rather than the specific polygraph results. Specifically, the defense argued that although the examination results were inconclusive, SA AH's telling appellant that he "didn't make it through the test," coupled with appellant's preconception of a "polygraph's infallibility" compelled appellant to change his account of the incidents and admit that PFC BS said "no." In support of its motion, the defense offered the following evidence: (1) the polygraph video; (2) the CID report detailing appellant's first interview; (3) the polygraph examination report; and (4) appellant's post-polygraph sworn statement. Appellant, however, did not testify for the limited purpose of explaining the basis for his allegedly preconceived notions regarding the infallibility of polygraph examinations and how those beliefs, together with SA AH's representations, compelled him to change his story.

The military judge denied defense's motion in a written ruling. He found the polygraph video was inadmissible under Military Rule of Evidence [Mil. R. Evid.] 707 and that *Wheeler* was neither applicable nor persuasive because it was factually distinguishable. The military judge further ruled that appellant was "not precluded from explaining his statements in the CID interview," but could "not make reference to or discuss the polygraph examination or results in his testimony." On the first day of trial, the military judge orally supplemented his written Mil. R. Evid. 707 ruling by also finding that the polygraph video was inadmissible under Mil. R. Evid. 403. He stated, "I also excluded [the polygraph video], assuming it had any relevance, under MRE 403. I find that the—any probative value substantially outweighed by the danger of unfair prejudice and confusing the issues or misleading the members."

Later in the trial, over the government's objection, the military judge allowed defense to introduce a sixty-four page redacted transcript of the pre- and post-

4

polygraph interviews.[3] Defense used the transcript to bolster its theory that appellant changed his story and made certain admissions as a result of SA AH's manipulative and calculating questions and statements to appellant.

## LAW AND DISCUSSION

On appeal, appellant asserts that the military judge erred in denying his motion to compel expert assistance and by excluding the polygraph video. As discussed below, we disagree.

### A. Denial of Expert Assistance

Courts review a military judge's ruling on a request for expert assistance for an abuse of discretion. *United States v. Lee*, 64 M.J. 213, 217 (C.A.A.F. 2006); *United States v. Gunkle*, 55 M.J. 26, 32 (C.A.A.F. 2001). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)).

An accused is entitled to expert assistance when he can show necessity. *Gunkle*, 55 M.J. at 31. The accused has the burden of establishing that a reasonable probability exists that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008). There are three aspects to showing necessity: (1) why the expert assistance is needed; (2) what would the expert assistance accomplish for the accused; and (3) why is the defense counsel unable to gather and present the evidence that the expert assistance would be able to develop. *United States v. Gonzalez*, 39 M.J. 459, 462 (C.A.A.F. 1994).

We hold the military judge did not abuse his discretion in denying appellant's motion to compel an expert consultant. Based on the pretrial pleadings, defense counsel clearly failed to meet the first and third prongs of *Gonzalez*. At trial, defense asserted two bases for why an expert was necessary. First, the defense asserted "that there is a strong possibility that appellant did not knowingly, willingly, voluntarily and intelligently waive his Article 31(b) rights during the polygraph interview." The defense counsel, however, despite bearing the burdens of proof and persuasion, provided scant evidence in support of that contention. *See*

---

[3] Defense requested a transcript of the polygraph examination out of concern that the polygraph equipment was visible in the video of the examination. Defense also redacted the portions of transcript.

Rule for Courts-Martial 905(c)(2)(A) (generally assigning the burden of persuasion to the moving party). In fact, the only evidence defense provided in support of this particular argument was appellant's GT score of 88, as indicated on his Enlisted Record Brief. Appellant's GT score, without more, is unpersuasive. We also reviewed the video recording of appellant's rights advisement, and it appears to us that appellant understood his rights and knowingly and intelligently waived them.[4]

Defense's second proffered basis for why the expert was needed centers on the allegation that the tactics employed by SA AH during the polygraph interview were "suggestive and coercive in nature." This claim also lacks merit as defense points to nothing in the interview as actually being suggestive or coercive. In fact, at the time of the motion filing, defense counsel admitted that they were unware of what actually transpired during the polygraph examination and interview.[5]

As to the third prong of *Gonzalez*, the military judge correctly determined the defense counsel failed to demonstrate sufficiently the reasons why he was unable to gather and present evidence without expert assistance. Defense counsel attempted to meet the burden through mere assertions that he lacked the necessary expertise and that he had neither "the time, resources nor knowledge." We also note that defense counsel made no effort to explain what efforts he made to acquire knowledge in the areas of suggestibility and false confessions. This falls fall short of meeting *Gonzalez*'s third prong. *See United States v. Short*, 50 M.J. 370, 373 (C.A.A.F. 1999) (explaining defense counsel are "expected to educate themselves to attain competence in defending an issue presented in a particular case, using a number of primary and secondary materials that are readily available"). Accordingly, we find the military judge was more than reasonable in determining that the third prong had not been met. As such, he did not abuse his discretion.

---

[4] A more robust evidentiary foundation might have been laid through the testimony of appellant himself. However, despite the avenue provided by Mil. R. Evid. 104(d) for an accused to offer limited-scope testimony on preliminary matters, appellant did not testify at a pretrial motions hearing.

[5] According to the defense motion to compel expert assistance, the video containing the complete polygraph examination and interviews, as well any notes taken by CID, had not been provided to the defense.

### B. The Polygraph Video

Appellant asserts that the military judge erred by not admitting the entire six-hour polygraph video in light of our superior court's decision in *United States v. Kohlbek*, 78 M.J. 326 (C.A.A.F. 2019), which post-dated appellant's court-martial. In his brief, appellant argues that he "certainly suffered psychological duress from [the CID special agent's] questions." Because of this, appellant reasons the military judge should have admitted the polygraph video pursuant to *Kohlbek* because the video evidenced facts and circumstance of the polygraph examination procedures that were necessary to explain the reasons or motivation for appellant's admissions. We disagree.

We review a military judge's decision to exclude evidence for an abuse of discretion. *Kohlbek*, 78 M.J. at 333 (citing *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013)). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.* (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)).

Military Rule of Evidence 707(a) provides "[n]otwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence." In *Kohlbek*, our superior court addressed only the third category of evidence concerning "any reference to an offer to take, failure to take, or taking of a polygraph examination," and determined that despite the expansive proscriptive language, that portion of the rule did not categorically prohibit the admission of "evidence regarding the facts and circumstances surrounding a polygraph examination to explain the reason or motivation for a confession." 78 M.J. at 332. Concerning this third category of polygraph evidence, our superior court did not mandate its admission; rather, it left military judges "to exercise their discretion in deciding whether to admit evidence regarding the facts and circumstances surrounding a polygraph examination to explain the reason or motivation for a confession." *Id.*

In *United States v. Sharp*, this court in an unpublished opinion determined that neither Mil. R. Evid. 707 nor *Kohlbek* permits the admission of an appellant's polygraph results based on the notion that the results themselves are relevant to explain the facts and circumstances surrounding an appellant's polygraph examination and his reasons or motivations for providing a confession. ARMY 20190149, 2020 CCA LEXIS 310, *7 (Army Ct. Crim. App. 10 Sep. 2020) (mem. op.). In *Wheeler*, the case upon which appellant relied at trial, the Navy Court addressed a similar issue and determined on "the narrow circumstances presented," that Mil. R. Evid. 707 was "unconstitutional as applied." 66 M.J. at 593. The Navy Court held the military judge erred by excluding evidence of the polygraph results

when offered by defense for the limited purpose of establishing that the investigator used the results as an investigative tool to obtain a false confession. *Id.*

Here, we conclude the military judge did not abuse his discretion. We find the polygraph video has little, if any, probative value. In other words, despite appellant's arguments at trial and on appeal, he has not sufficiently demonstrated that he was susceptible to making false confessions as a result of the polygraph or that he suffered from psychological duress such that he unwillingly succumbed to the CID interrogation methods and provided false admissions. Appellant simply fails to make any particularized showing of relevant "facts and circumstances surrounding [his] polygraph examination to explain the reason or motivation for [his] confession." *Kohlbek*, 78 M.J. at 332.

Appellant did not testify for the limited purpose of the motion in limine. *Cf. Kohlbek*, 78 M.J. at 330 (noting the appellant's testimony about the facts and circumstances surrounding his polygraph examination provided at a pretrial motions hearing); *Wheeler*, 66 M.J. at 591–92 (same). In his pretrial motion, defense counsel argued that appellant made inculpatory admissions because he was "[r]elying on the truth of the CID agent's statement" based on his "preconception of a polygraph's infallibility." He further argued that appellant made inculpatory admissions "because he believed it must have been true if the polygraph said he lied." If these assertions were supported by evidence, that might weigh in favor of admitting certain logically relevant polygraph evidence, provided it was consistent with *Kohlbek*, and legally relevant under Mil. R. Evid. 403.

But the averments of counsel in support of a pretrial motion are not evidence, *see United States v. Facey*, 26 M.J. 421, 425 (C.M.A. 1988); *United States v. Watson*, 14 M.J. 593, 594 (A.F.C.M.R. 1982), and our review under the abuse of discretion standard of review is "properly based on a military judge's disposition of the motion submitted to him or her—not on the motion that *appellate* defense counsel now wishes *trial* defense counsel had submitted." *United States v. Carpenter*, 77 M.J. 285, 289 (C.A.A.F. 2018) (emphasis in original) (citations omitted). As the record sits at this court, it contains nothing about appellant's self-described state of mind, to include any plausible preconceived notions regarding a polygraph's infallibility or what events or actions that occurred during the CID interview that caused him to change his story and make damaging admissions. There is no evidence, for example, that appellant changed his story and made false admissions indicating nonconsensual sexual acts because he believed in the purported polygraph results or was somehow compelled to confess by CID's characterization of the results.

Having independently reviewed the evidence in the record, to include the polygraph video, we are not convinced that appellant was somehow susceptible to making false admissions or otherwise duped or pressured into making false

admissions. There is nothing in the record to indicate that appellant held some preconceived notion regarding the polygraph's infallibility. A review of the video also indicates that appellant did not suffer from psychological duress, nor did CID's tactics and techniques improperly influence him during the interview.[6] Rather, appellant appeared self-assured and assertive in his interactions with CID. He also demonstrated clarity of thought and exhibited no behavior that indicates he was suffering from mental incapacitation, physical pain, or severe psychological duress. For example, even after being told by SA AH that he "did not make it through the test," appellant maintained his initial version of events for nearly an hour. It appears to us that SA AH's statements to appellant about the polygraph results had little, if any, impact on him. Contrary to what appellant argued at trial and on appeal, our independent review of the video demonstrates that appellant was not at all convinced of the polygraph's infallibility. He never said so in the video and did not act as such. On this record, and even through a retroactive application of *Kohlbek*, we find the military judge did not abuse his discretion in excluding the polygraph video under Mil. R. Evid. 707.

Even if the military judge erred in his application of Mil. R. Evid. 707 in light of *Kohlbek*, we find no abuse of discretion by the military judge's exclusion of the polygraph video based on his supplemental Mil. R. Evid. 403 ruling. *See United States v. Brunetta*, ARMY 20160697, 2019 CCA LEXIS 63, *8–10 (Army Ct. Crim. App. 14 Feb. 2019) (mem. op.) (noting the military judge erred by excluding evidence based on an overbroad view of Mil. R. Evid. 412 but nevertheless concluding the military judge properly excluded the same evidence alternatively under Mil. R. Evid. 403). As stated above, *Kohlbek* does not mandate the admission of logically relevant polygraph evidence if the evidence does not survive the rigors of Mil. R. Evid. 403. *See Kohlbek*, 78 M.J. at 332. Here, because the military judge conducted a balancing test under Mil. R. Evid. 403, "we will not overturn his decision unless there is a clear abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)). In his initial and reply brief, appellant makes no argument attacking the military judge's alternative Mil. R. Evid. 403 ruling. Having reviewed the record, we find no basis to overturn the military judge's ruling. Given the limited evidence presented in the pretrial motion, and the lack of any connection between appellant's state of mind or preconceived notions about polygraph examinations, the military judge was well within his discretion to exclude the six-hour polygraph video under Mil. R. Evid. 403.

---

[6] The polygraph video depicts appellant's pre-polygraph interview, the polygraph examination itself, and the post-polygraph interview.

Even assuming the military judge erred in his application of both Mil. R. Evid. 707 and 403—and should have admitted the polygraph video into evidence—we find appellant suffered no prejudice by its exclusion. The "findings or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a). For nonconstitutional evidentiary errors, the test for prejudice "is whether the error had a substantial influence on the findings." *Kohlbek*, 78 M.J. at 334 (quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017)).[7] We review de novo the prejudice resulting from an erroneous evidentiary ruling and do so by considering: (1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *Id.*

First, the government presented a strong case. Private First Class BS's in-court testimony provided detailed recounting of the sexual assaults. Although appellant's defense counsel cross-examined the victim, he made little, if any, headway in discrediting her account of the events that night. Three witnesses corroborated PFC BS's testimony by providing evidence, that on three separate occasions, PFC BS's disclosed that appellant raped her. The government introduced appellant's sworn statement containing his admissions, a hand-drawn picture depicting where the sexual assaults occurred, and a letter of apology to the victim.[8]

Next, we find the defense's case was relatively weak. Although defense counsel attempted to advance several theories, none seemed plausible based on our review of the record. First, the defense unsuccessfully attempted to establish PFC BS fabricated allegations that she was sexually assaulted because she had "regret sex" and that she only officially reported it after her boyfriend found out. Notwithstanding these claims, the defense did little to impeach her credibility on cross-examination and presented no impeachment or character witnesses. Second, appellant unsuccessfully attempted to challenge the voluntariness and reliability of his admissions to CID. Although appellant extensively cross-examined SA AH, and

---

[7] Assuming an evidentiary error based on a misapplication of Mil R. Evid. 707 and 403, we need not reach the constitutional question addressed by our sister court in *Wheeler*. 66 M.J. at 593; *see Kohlbek*, 78 M.J. at 335 n.7 (declining to reach the constitutional question in light of the court's conclusion that the military judge erred by misapplying Mil. R. Evid. 707).

[8] Appellant's sworn statement and letter of apology were admitted without objection by the defense. Although appellant's hand-drawn picture was admitted over defense objection, appellant does not assert, nor do we find, that the military judge erred in admitting it.

introduced a redacted transcript of the pre- and post-polygraph examination interviews, counsel did little, if anything, to identify what tactics, techniques or questions caused appellant to render false admissions.

Lastly, we find the materiality and quality of the polygraph video extremely low given appellant's contention as to what it allegedly depicts. Again, we find nothing in the video causing us to conclude that appellant was susceptible to making false admissions. Nor are we convinced such susceptibility coupled with psychological duress caused appellant to make such admissions in response to CID's tactics and techniques. In other words, even if it had been admitted, we conclude it would not have tempered the devastating effects of appellant's admissions. Finally, we note that admitting the polygraph video was not necessary for appellant to challenge the voluntariness of his admissions or the tactics of SA AH.

Based on the foregoing, the government has met its burden to show that even if the military judge erred by not admitting the polygraph video, the error did not have a substantial influence on the findings.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence as approved by the convening authority are AFFIRMED.

Chief Judge KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

11