*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
**Appellee**

v.

### Jason A. KOHLBEK, Specialist
United States Army, Appellant

**No. 18-0267**

Crim. App. No. 20160427

Argued November 6, 2018—Decided February 25, 2019

Military Judge: John S. T. Irgens

For Appellant: *Lieutenant Colonel Christopher Daniel Carrier* (argued); *Barry Steinberg,* Esq. (on brief); Captain Cody Donovan Cheek.

For Appellee: *Captain Brian Jones* (argued); *Colonel Steven Haight, Lieutenant Colonel Eric K. Stafford,* and *Major Virginia Tinsley (*on brief); Captain Jeremy S. Watford.

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and MAGGS, joined.

———————————

Judge RYAN delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of three specifications of sexual abuse of a child and one specification of communicating indecent language to a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012).[1] He was sentenced to confinement for fifteen months, reduction to E-3, and a bad-conduct discharge.[2] The convening authority approved the sentence.

———————————

[1] The complicated procedural history that preceded the court-martial's conviction for these offenses is detailed *infra* pp. 3–5.

[2] The ACCA opinion indicates that Appellant was sentenced to a reduction to the grade of E-1, *United States v. Kohlbek*, No. ARMY 20160427, 2018 CCA LEXIS 177, at *1–2, 2018 WL 1779325, at *1 (A. Ct. Crim. App. Apr. 12, 2018) (unpublished),

The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and the sentence as approved by the convening authority. *Kohlbek*, 2018 CCA LEXIS 177, at \*2–3, 2018 WL 1779325, at \*1. We granted Appellant's petition to review the following issue:

> Whether the military judge erred by misconstruing Mil. R. Evid. 707 and prohibiting Appellant from presenting evidence relevant to Appellant's post-polygraph statement.

Military Rule of Evidence (M.R.E.) 707 provides that:

> Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

The military judge and the ACCA construed M.R.E. 707's language ("or any reference to . . . taking of a polygraph") to prohibit the introduction of any evidence regarding the facts or circumstances involving a polygraph examination offered to explain a later confession—even without reference to the results. While that is a possible reading of the rule, it is not a necessary reading of the rule. Moreover, it is not a rule followed in any federal district court, it is not a rule with any military purpose assigned to it, and it is not a rule dictated by the Supreme Court's decision in *United States v. Scheffer*, 523 U.S. 303 (1998).

Accordingly, interpreting M.R.E. 707 in line with ordinary rules of statutory construction and the "rules of evidence generally recognized in the trial of criminal cases in the United States district courts," Article 36(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836(a) (2012), we hold that the prohibition on "any reference to . . . [the] taking of a polygraph examination," does not encompass evidence regarding the facts and circumstances of a polygraph examination procedure offered to explain the reason or motivation for a confession. *See, e.g., Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

---

but the convening authority action indicates that the reduction was to the grade of E-3.

However, we also hold that the military judge's error in excluding evidence about the circumstances of the polygraph examination in this case did not have "a substantial influence on the findings." *See United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017) (quoting *United States v. Gunkle*, 55 M.J. 26, 30 (C.A.A.F. 2001)). The decision of the United States Army Court of Criminal Appeals is affirmed.

## I. Facts

On September 19, 2015, Appellant's stepdaughter, KG, had her fourteen-year-old friend, AH, at their house for a sleepover. AH and KG went to sleep in KG's room. Sometime after midnight Appellant entered that room, nibbled on AH's ear, grabbed her breast and buttocks, and asked her, "Do you want me?" AH pulled away from Appellant and woke up KG. Appellant left and AH locked the door "[s]o [Appellant] couldn't come back in the room." Appellant returned sometime later and, although initially unable to get back into the room, he eventually unlocked the door. This prompted AH to ask KG if she could go home, and KG agreed to walk her part of the way there. AH immediately reported the incident to her father and a criminal investigation ensued.

After waiving his right to remain silent under Article 31, UCMJ, 10 U.S.C. § 831 (2012), Appellant made an initial statement to law enforcement and agreed to submit to a polygraph examination, which lasted four hours. When the examination concluded, law enforcement told Appellant that his answers indicated deception. Appellant subsequently drafted a detailed statement regarding his conduct, stating that on the night in question, AH was flirting with him, that he consumed several alcoholic beverages, entered her bedroom, and put his hand under her shirt. When asked what his intent was when he asked AH "Do you want me?," he answered that it was "sexual."

As a result of these events, Appellant was charged with four specifications of sexual abuse of a child, violations of Article 120b, UCMJ, 10 U.S.C. § 920b (2012). Appellant pleaded guilty to three specifications of the lesser included offenses of assault consummated by battery on a child under the age of sixteen, violations of Article 128, UCMJ, 10 U.S.C. § 928 (2012).

The case was heard by a military judge sitting as a general court-martial. During the *Care*[3] inquiry, Appellant indicated that he was "highly intoxicated" at the time of the alleged offenses and was "[un]aware of what [he] did or what [he] could have done." However, he admitted the facts necessary for the military judge to accept his guilty pleas as to the three Article 128, UCMJ, specifications.

The Government then proceeded to trial to prove the greater offense and specifications thereunder of Article 120b, UCMJ, which requires specific intent. *Kohlbek*, 2018 CCA LEXIS 177, at *2–3, 2018 WL 1779325, at *1. As relevant to the granted issues, prior to trial, Appellant filed a motion in limine, arguing that he should be permitted, pursuant to his Sixth Amendment right to present a defense, to introduce evidence relating to the polygraph to explain the circumstances of his post-polygraph confession. At the hearing on the motion:

> Appellant testified that he was very uncomfortable during the test. He claimed his arm was turning purple because of a blood pressure cuff and that he had hip pain that was "extreme." However, he continued to agree to participate because he "felt [he] had nothing to hide" and he "wanted to show that [he] was being honest and truthful." When the test was over, (and after appellant was no longer hooked up to the polygraph), the polygrapher told appellant that the test indicated he was being deceptive and that he was hiding something. Appellant stated that after talking for twenty- to twenty-five minutes, he told the agent "Fine. I did it. I will write whatever you want. I'll write a sworn statement to it. Just get me out of here." Appellant testified that he then was left alone to write the narrative portion of the sworn statement, which was then followed by a question and answer section.

*Kohlbek*, 2018 CCA LEXIS 177, at *6–7, 2018 WL 1779325, at *2.

Appellant further testified that: (1) he was told that he could only answer "yes" or "no" to the polygrapher's questions even though he did not remember the events he was asked about; (2) that sitting still during the polygraph examination was painful because of his hip issues; (3) that he was

---

[3] *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

"visibly in discomfort during the interrogation due to pain caused by hip issues"; and (4) that the polygrapher indicated that if Appellant "continued to say that [he had no recollection of the events in question], that he would have to hook [Appellant] back up to the machine, and . . . go more rounds [on the polygraph]."

The military judge denied the motion, citing M.R.E. 707 and *Scheffer*, and convicted Appellant, contrary to his pleas, of four specifications of Article 120b, UCMJ.[4]

## II. Procedural History

On appeal to the ACCA, Appellant argued, inter alia, that the military judge erred when he did not allow Appellant to tell the court-martial that the polygraph examination was the source of his significant pain and discomfort that purportedly led to his admissions, and that his admissions only came after he was administered a polygraph and told his answers were deceptive. In response, the ACCA noted that "[M.R.E.] 707 clearly prohibits this information," *Kohlbek*, 2018 CCA LEXIS 177, at *8–9, 2018 WL 1779325, at *3, and that it barred two types of evidence that Appellant wanted to introduce:

> First, appellant was prohibited from telling the court-martial that he had taken a polygraph. Second, appellant was prohibited from explaining to the court-martial the *effect* that having taken a polygraph (and being told he had been deceptive) had on his decision to make admissions. It is the latter of these two that is important. That appellant took a polygraph is irrelevant unless it has a logical connection to appellant's decision to make admissions.

*Id.* at *11–12, 2018 WL 1779325, at *4. Finally, the ACCA essentially concluded that no information related to Appellant's decision to confess necessitated mention of the polygraph because he could have permissibly testified that he confessed because he wanted to leave, had hip pain, and wanted to end the interview, all without reference to the polygraph. Thus, M.R.E. 707 "was not unconstitutionally

---

[4] Appellant also moved to suppress his confession entirely. The military judge denied his motion on the basis that the Government "sufficiently established that the statement [of Appellant] is reliable as a matter of law and was voluntarily made."

applied in appellant's case." *Id.* at *14, 2018 WL 1779325, at *5.

## III.    Discussion

For purposes of construing the Military Rules of Evidence, "'[i]t is a well established rule that [this Court uses] principles of statutory construction.'" *United States v. Matthews*, 68 M.J. 29, 36 (C.A.A.F. 2009) (quoting *United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007)). We review questions of statutory construction de novo. *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016). Where the language of the rule is susceptible to only a single interpretation, we apply the rule as written. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (citations omitted) (internal quotation marks omitted)). But where the language is susceptible to more than one interpretation, we can and may consider whether one interpretation or the other creates potential constitutional or other issues. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting) ("[W]hen a statute is reasonably susceptible of two interpretations . . . the court prefers the meaning that preserves to the meaning that destroys.").

M.R.E. 707 provides that:

> Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

The question here is how broadly the prohibition on evidence of "any reference to . . . [the] taking of a polygraph examination" sweeps. The prohibition can be read as a blanket per se prohibition on introducing any evidence that references a polygraph examination in any way. *Kohlbek*, 2018 CCA LEXIS 177, at *9–11, 2018 WL 1779325, at *3–5. Alternatively, it can be read as an exclusion of evidence referencing taking a polygraph that implicates the reliability of the results of a polygraph. *United States v. Wheeler*, 66 M.J. 590, 592–95 (N–M. Ct. Crim. App. 2008). Because there are two plausible interpretations of this language, this Court may consider whether one of the interpretations creates any

constitutional or other problems. *See Edward J. DeBartolo Corp.*, 485 U.S. at 575 (1988) ("[T]he Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

We do not undertake this inquiry in a vacuum. Rather, we view it through the dual lenses of the Supreme Court's decision in *Scheffer* and the limitations on the President's ability to make rules of evidence contained in Article 36(a), UCMJ. On balance, we are unpersuaded by the Government's arguments that the rule sweeps so broadly as to per se prohibit evidence about the facts and circumstances about a polygraph examination procedure offered to explain the reason or motivation for a confession and that the issue in this case is controlled by *Scheffer*.

## A. Statutory Interpretation

The prohibition on "any reference to . . . [the] taking of a polygraph examination" must be understood in the context of the entire rule. *See United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc., Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor."). M.R.E. 707 lists three categories of polygraph examination information that may not be admitted into evidence: (1) the results; (2) the polygraph examiner's opinion; and (3) "any reference to an offer to take, failure to take, or taking of a polygraph examination." The prohibition on evidence of the results of a polygraph examination is the clear target of this rule, and the remaining prohibitions are calibrated to exclude evidence that would permit panel members to infer, or otherwise draw conclusions about, the results of a polygraph examination. All these prohibitions are tied to the core concern that polygraph examinations are scientifically unreliable.[5] Evidence of the facts and circumstances of a polygraph examination procedure offered to explain the reason or motivation for a confession are in no way tied to the reliability of the test itself. We thus adopt the more narrow interpretation of "reference to . . . [the] taking of a polygraph examination," which permits military judges to exercise their discre-

_____

[5] The majority opinion in *Scheffer* recognized that the drafters of M.R.E. 707 cited concerns regarding the scientific reliability of polygraph examination results, usurping the role of the panel members in adjudging guilt or innocence, and avoiding litigation on collateral issues as justification for the rule. *Scheffer*, 523 U.S. at 309 n.5.

tion in deciding whether to admit evidence regarding the facts and circumstances surrounding a polygraph examination to explain the reason or motivation for a confession.

This interpretation of the relevant language in M.R.E. 707 is further supported by two additional canons of construction: (1) the "constitutional doubt" canon, and (2) the "presumption of validity" canon. Under the former, statutes "should be interpreted in a way that avoids placing [their] constitutionality in doubt." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247 (2012). Interpreting M.R.E. 707 as broadly as the Government suggests would raise a potentially serious constitutional question. In *Scheffer*, the Government justified the prohibition of the results of the polygraph exam on concerns regarding the scientific reliability of polygraph results. The Court determined that this was a permissible rather than an arbitrary interest. *Scheffer*, 523 U.S. at 309 (observing that there is "unquestionably . . . a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial").

In contrast, here no justification is offered by the Government for a rule preventing Appellant from referencing the polygraph examination, and the painful circumstances surrounding it, to explain the reason for his confession. While rules may permissibly exclude relevant evidence, they may not be "arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 308 (internal quotation marks omitted). No purpose is identified here, and the Government's interpretation could infringe upon "weighty" Fifth Amendment due process and Sixth Amendment concerns. *Crane v. Kentucky*, 476 U.S. 683, 690–91 (1986) (permitting state to exclude competent, reliable evidence regarding the circumstances of a confession violated defendant's rights to due process and to present a complete defense).

The latter canon also counsels that we interpret M.R.E. 707 more narrowly than the Government requests. Unsurprisingly, under the "presumption of validity" canon, an interpretation of a statute or rule that renders it valid is preferable to an interpretation that would invalidate the rule. Scalia & Garner, *Reading Law*, at 66. Reading M.R.E. 707 as broadly as the text might allow would likely exceed the scope of President's authority under Article 36, UCMJ. *See infra* pp. 9–11. However, reading the statute to only cover "references" to polygraph exams that implicate the result, or

the reliability of the test would be well within the President's authority under Article 36, UCMJ. See *infra* pp. 9–11.

## B.  *United States v. Scheffer*

Further, the Government's argument that M.R.E. 707 must be read to prohibit the admission of any evidence regarding a polygraph for any reason reads the Supreme Court's decision in *Scheffer* too broadly. In *Scheffer*, the Supreme Court addressed the question whether M.R.E. 707's prohibition on admitting evidence of polygraph results imposed a constitutionally impermissible barrier on a defendant's Sixth Amendment right to present a defense. 523 U.S. at 308–09. The Court held that this portion of the rule was not an arbitrary or disproportionate restriction on a defendant's right to present evidence, in violation of the Sixth Amendment, because it was a legitimate means of prohibiting scientifically unreliable evidence. *Id.* at 312.

That holding, which involved a defendant's ability to introduce evidence of the *results* of a polygraph examination or evidence that assumes the reliability of such results, turned on the unreliability of the test itself under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See Scheffer*, 523 U.S. at 305–06. It neither answers nor controls the altogether different question whether M.R.E. 707 prohibits any mention of the fact or circumstances surrounding a polygraph for any purpose.[6] The scientific reliability of Appellant's polygraph test is irrelevant to his purpose in introducing the evidence in question—explaining the context in which his confession was made. The reasons justifying a per se ban on the introduction of the results of polygraph examinations, *Scheffer*, 523 U.S. at 309–11, are not present here.

## C.  Article 36, UCMJ

Moreover, the Government's interpretation of M.R.E. 707 yields other problematic consequences. Whether a rule promulgated by the President is consistent with his authority under Article 36, UCMJ, is a question of statutory construction, which this Court reviews de novo. *United States v. Nerad*, 69 M.J. 138, 141–42 (C.A.A.F. 2010). Under Article 36(a), UCMJ, the President may, "so far as he considers

---

[6] We further note that adopting the Government's interpretation of the rule would require resolution of the constitutional issue raised in *Scheffer* as it relates to the remainder of the rule and the facts of this case.

practicable," prescribe regulations for courts-martial that "apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter."

There is no counterpart to M.R.E. 707 in either the Federal Rules of Evidence (Fed. R. Evid.) or the Federal Rules of Criminal Procedure. *Scheffer*, 523 U.S. at 323 (Stevens, J., dissenting). However, consistent with M.R.E. 707, the *results* of polygraph tests are generally inadmissible in U.S. district courts, after applying Fed. R. Evid. 702 and *Daubert*, alone or in conjunction with Fed. R. Evid. 403, due to their perceived scientific unreliability. *See, e.g.*, *United States v. Tenorio*, 809 F.3d 1126, 1130 (10th Cir. 2015); *United States v. Montgomery*, 635 F.3d 1074, 1094 (8th Cir. 2011)); *United States v. Rodríguez-Berríos*, 573 F.3d 55, 73 (1st Cir. 2009). As *Scheffer* recognized, a rule permitting a per se ban on unreliable evidence in the military justice system is neither an arbitrary nor a disproportionate restriction on a defendant's Sixth Amendment right to present evidence in his defense. *Scheffer*, 523 U.S. at 312.

But it is not the practice in U.S. district courts—generally or otherwise—to flatly prohibit evidence about the facts and circumstances about a polygraph examination procedure offered to explain the reason or motivation for a confession. *See, e.g.*, *United States v. Blake*, 571 F.3d 331, 346 (4th Cir. 2009) ("[T]estimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result but is instead offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced." (quoting *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006)). Rather, those evidentiary decisions are made on a case-by-case basis and reviewed for an abuse of discretion. *See id.* at 348 (finding no abuse of discretion in the district court's ruling that Fed. R. Evid. 403 did not prohibit the admission of the evidence of the context of the polygraph examination). Under the Government's interpretation, then, the President would not have applied "the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." Article 36(a), UCMJ.

The presence of a unique military concern could make following the federal practice regarding the admission of evidence surrounding polygraph examinations impracticable

and justify a divergent rule. *Scheffer*, 523 U.S. at 323 (Stevens, J., dissenting); *see also United States v. Scheffer*, 44 M.J. 442, 445 (C.A.A.F. 1996), *rev'd on other grounds by* 523 U.S. 303 (1998). But no such military concern is obvious here, and the Government was unable to provide anything other than generalized concerns about the low reliability of polygraph evidence and the collateral problems associated with its use as evidence. Neither of those concerns is germane when it is the circumstances of the polygraph examination offered to explain a confession, rather than the results and scientific reliability, that are implicated.

## D. Prejudice

A military judge's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (internal quotation marks and citations omitted). This Court reviews " 'the prejudicial effect of an erroneous evidentiary ruling de novo.' " *United States v. Savala*, 70 M.J. 70, 77 (C.A.A.F. 2011) (quoting *United States v. Toohey,* 63 M.J. 353, 358 (C.A.A.F. 2006)). Given our interpretation of M.R.E. 707, the military judge "operated under an erroneous view of the law." *United States v. Hills,* 75 M.J. 350, 355 (C.A.A.F. 2016).

Article 59(a), UCMJ, provides that the "finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a) (2012). For nonconstitutional evidentiary errors, the test for prejudice "is whether the error had a substantial influence on the findings." *Fetrow*, 76 M.J. at 187 (citation omitted). In conducting the prejudice analysis, this Court weighs: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015) (quoting *United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008)); *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999). Applying these factors, we conclude that the failure to admit the requested information regarding the polygraph examination did not have a "substantial impact on the findings."

The Government's case was strong. The victim, AH, provided detailed testimony and material evidence of Appellant's actions. She testified that Appellant touched her breast, pelvic area, and buttocks, that he nibbled her ear, that he asked her, "Do you want me?," and that he reentered the room after she locked the door. AH immediately left Appellant's house after these events and told her father that she was "almost raped." Appellant's stepdaughter, KG, also testified that AH told her that Appellant tried to rape her.

While Appellant's alleges that the information would explain his reason for confessing, his alternative motion—that his confession was coerced—was denied. Moreover, Appellant's case rested on his assertion that he was too intoxicated to form the specific intent necessary to have committed the charged offenses. In support of that theory, he offered several witnesses to support his claim that he was heavily intoxicated around the time the crime was committed. One of Appellant's friends who attended the gathering at the house testified that Appellant was "a little shambly on his feet," and that he felt the need to walk beside him to ensure that Appellant "made it to the bed" at the end of the evening. AH similarly testified that Appellant smelled of alcohol when he entered her room, and described his appearance as "kind of conscious, kind of not . . . . Like he seemed in and out of it." The first responding officer to arrive at Appellant's home believed Appellant was intoxicated because he was "leaning on the wall" and "slurring his speech."

Nevertheless, AH's description of Appellant's actions and her nearly contemporaneous reports of the incident to other individuals provide ample evidence that Appellant acted with specific intent to gratify his sexual desires. It strains reason to infer anything other than the specific intent to gratify sexual desires from Appellant's own words, "Do you want me?"—especially when considered in the context of grabbing AH's breast and buttocks, nibbling her ear, and trying to reenter the locked room. Finally, Appellant's own expert witness conceded that a "blackout" state of intoxication does not preclude an individual from forming specific intent.

Nor is the evidence particularly material. Even assuming the trier of fact believed the facts and circumstances of Appellant's polygraph examination explained the reasons for his confession, it would only call into question the reliability of his confession. It would not, however, negate or otherwise

disprove the remaining evidence supporting Appellant's specific intent.

In light of the overwhelming strength of the Government's case, we are not persuaded that admission of testimony about the circumstances of the polygraph examination would have had a substantial impact on the evidence related to specific intent or the findings in this case.[7]

## IV.    Conclusion

The judgment of the United States Army Court of Criminal Appeals is affirmed.

---

[7] Appellant contends that exclusion of the evidence violated both M.R.E. 707 and the Constitution. Because we have concluded that excluding the evidence violated M.R.E. 707, we do not reach the question whether the exclusion of the evidence also violated the Constitution. If excluding the evidence was a constitutional error, the test for prejudice would be whether the error was "harmless beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018). Even under this higher standard, we would conclude that there was no prejudice based on the analysis above.