*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
TANG, LAWRENCE, and STEPHENS
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Vanrowin F. MANLAMBUS**
Hospital Corpsman Chief Petty Officer (E-7), U.S. Navy
Appellant

**No. 201900080**

Decided: 27 May 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Shane Johnson (arraignment)
Stephen C. Reyes (trial)

Sentence adjudged 29 November 2018 by a general court-martial convened at Joint Base Pearl Harbor-Hickam, Hawaii, consisting of officer members. Sentence approved by the convening authority: reduction to E-6 and a dishonorable discharge.

For Appellant:
*Captain Valonne L. Ehrhardt, USMC*

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Timothy C. Ceder, JAGC, USN*

Judge STEPHENS delivered the opinion of the Court, in which Senior Judge TANG and Judge LAWRENCE joined.

———————————

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————

STEPHENS, Judge:

Appellant was found guilty, contrary to his pleas, of attempted sexual assault of a child and attempted sexual abuse of a child [lewd act], in violation of Article 80, Uniform Code of Military Justice [UCMJ].[1]

Appellant raises five assignments of error [AOE]. Each AOE is raised pursuant to *United States v. Grostefon*[2] and we have renumbered them as follows: (1) the evidence is legally and factually insufficient; (2) the military judge erred when he prohibited Appellant from introducing hearsay testimony from his own recorded interview with special agents from the Naval Criminal Investigative Service [NCIS]; (3) the NCIS special agents violated Appellant's constitutional rights when they failed to provide him a rights advisement under *Miranda v. Arizona*;[3] (4) Appellant's trial defense counsel [TDC] was ineffective; and (5) NCIS special agents improperly collected Appellant's DNA and fingerprints prior to conviction.[4] We find no errors that materially prejudiced Appellant's substantial rights and find the findings and sentence to be correct in law and fact. We affirm.

## I. BACKGROUND

Appellant was stationed in Hawaii but was sent on temporary additional duty [TAD] to Camp Foster in Okinawa, Japan. While TAD, he answered an online public message post. The post read, "Okinawa Only HMU"[5] (hit me up) and depicted a jacket studded with jewels and very short ripped women's

---

[1] 10 U.S.C. § 880 (2012).

[2] 12 M.J. 431 (C.M.A. 1982).

[3] 384 U.S. 436 (1966).

[4] We have considered the fifth AOE and find it to be without merit. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987), *cert. denied*, 485 U.S. 968 (1988).

[5] Pros. Ex. 1 at 2; Pros. Ex. 2 at 1.

shorts. Appellant replied, "Are u m or f?" and received back, "F."[6] He learned she was also living on Camp Foster and that her name was "Marie." Marie claimed to be a 15-year-old student living with her single mother, but was actually an NCIS special agent.

Over the course of their online chats, Appellant turned the conversation to sexual activity. Despite being told up-front, and repeatedly, that Marie was only 15, Appellant questioned her about her sexual experience and discussed what sexual acts they could do together, including vaginal intercourse and performing oral sex on each other. He also repeatedly requested pictures of her breasts.

They made arrangements for Appellant to come to her mother's apartment while she was at work so they could have oral sex and intercourse. Marie requested Appellant bring her "a treat," either "a snickers or gummy bears or both."[7] Appellant got both. When he stepped off the elevator in Marie's apartment building and was looking for her door, NCIS special agents were waiting for him and took him into custody. They also seized Appellant's cell phone and the treats he purchased for Marie.

Before interviewing Appellant, NCIS special agents provided him a rights advisement under Article 31(b), UCMJ. Appellant waived his rights and agreed to an interview. He admitted that he travelled to the apartment with the intent to have sex with Marie. But he maintained that he believed she lied about her age—all four times—and also lied about her identity. He said he believed Marie was a dependent spouse and that when she mentioned her "mom," she was really referring to her husband. But a search of Appellant's cell phone showed Internet searches, during the time he was chatting with Marie, for "how do you know if a minor is trying to bait you" and "pedobating—scam online predators."[8] He also searched for the NCIS field office aboard Camp Foster.

Additional facts are discussed below.

---

[6] *Id.*

[7] Pros. Ex. 1 at 46; Pros. Ex. 2 at 91.

[8] Pros. Ex. 5 at 1-2.

## II. DISCUSSION

### A. The Evidence is Legally and Factually Sufficient

We review Appellant's convictions for legal and factual sufficiency de novo.[9] The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses [this Court is] convinced of [A]ppellant's guilt beyond a reasonable doubt."[10] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[11] When conducting this review, we are "limited to the evidence presented at trial."[12] Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict.[13]

When testing for legal sufficiency, we look at "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[14]

To convict Appellant under Article 80, UCMJ,[15] the Government must prove beyond a reasonable doubt that: (1) Appellant made a certain overt act; (2) this amounted to more than mere preparation; (3) it apparently tended to effect the commission of a crime; and (4) the act was done with specific intent to commit another offense under the UCMJ. Here, the underlying sexual

---

[9] Art. 66, UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[10] *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation, internal quotation marks, and emphasis omitted).

[11] *Washington*, 57 M.J. at 399.

[12] *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) (quoting *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007)).

[13] *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001).

[14] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018).

[15] 10 U.S.C. § 880 (2012).

offenses were sexual assault of a child [sexual intercourse and oral sex][16] and sexual abuse of a child [various lewd acts].[17]

The case against Appellant was strong. His own words and actions were used to convict him. His travel to the apartment, along with his chats, were sufficient for the underlying overt act required for the convictions.

Appellant testified during the trial. He admitted he travelled to the apartment to have sex, but maintained he believed Marie was lying about her age and identity as part of an online fantasy experience. He testified that when he received pictures of "Marie"—actually pictures of a female law enforcement agent who was then 21 years old[18]—he believed she was an adult dependent spouse instead of a 15-year-old girl.[19]

However, this was belied by the fact that Appellant searched the Internet for information on how to know if a minor was trying to "bait" him. He also repeatedly asked Marie to provide specifically posed photographs, and a "live" photograph in one messaging application, to prove she was a real person. He testified that he was "concerned of being exploited" or "extorted."[20] Yet, despite these concerns, Appellant never attempted to even temporarily suspend the "fantasy" chat with Marie and explain that he was amenable to adulterous sex with her if she was a dependent spouse or adult, but not if she were, in fact, a 15-year-old girl. He also repeatedly recognized the risk of any eventual sexual relationship and worried that Marie might be affiliated with law enforcement. Appellant explained on cross-examination that this was solely predicated on his fear of getting in trouble for adultery. Appellant certainly is not required to prove his innocence, but his view of the plain facts and evidence is simply not credible.

---

[16] 10 U.S.C. § 920b (2012).

[17] The lewd acts were Appellant saying, (1) "Which one do you like better? Giving or receiving?" in reference to oral sex, (2) "Doggy or missionary?" (3) "I was thinking maybe you would like some receiving and doggy," (4) I dont wanna cum in you you k[n]ow, Lol," "Pull out is the way," (5) "When im about to come, you would suck me till I cum…would like to have that feeling," and (4) "Ill try to make you come while licking you. That would be nic[e]." Pros. Ex. 2 at 15, 34, 38, 39, 71, and 72, respectively; 10 U.S.C. § 920b(c) (2012).

[18] Record at 287-88.

[19] *Id*. at 499-500.

[20] *Id*. at 512.

Appellant also argues he was entrapped. For the Government to entrap someone, it must first engage in some kind of inducement.[21] Inducement requires more than the Government simply providing the "opportunity or facilities to commit the crime" but must rise to the level of "conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense."[22] But the Government may still obtain a conviction if it proves that an accused is predisposed to such conduct, which can be shown when a "person accepts a criminal offer without being offered extraordinary inducements."[23]

Appellant faced no extraordinary inducements from the Government. He introduced the topic of sex after Marie told him she was only 15 years old. Appellant repeatedly drove the conversation with specific sexual activities he wanted to do with Marie. His own actions and words demonstrated his predisposition.

We find the evidence for the convictions to be factually sufficient and in reviewing the evidence "in the light most favorable to the prosecution"[24] we also find that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. The convictions are both factually and legally sufficient.

## B. The Military Judge Did Not Abuse His Discretion by Preventing Appellant from Offering Hearsay Testimony

"We review a military judge's decision to admit or exclude evidence for abuse of discretion."[25] A military judge abuses his discretion when his findings of fact were "clearly erroneous or if his decision is influenced by an

---

[21] *United States v. Howell*, 36 M.J. 354, 359-60 (C.A.A.F. 1993).

[22] *United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (citations and quotation marks omitted).

[23] *United States v. Bell*, 38 M.J. 358, 360 (C.M.A. 1993) (quoting *United States v. Evans*, 924 F.2d 714, 718 (7th Cir. 1991)).

[24] *Rosario*, 76 M.J. 117 (quoting *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014)).

[25] *United States v. Brewer*, 61 M.J. 425, 428 (C.A.A.F. 2005).

erroneous view of the law."[26] "The abuse of discretion standard calls for more than a mere difference of opinion."[27]

At trial, part of Appellant's strategy was to present himself as someone without consciousness of guilt and with nothing to hide. He highlighted his cooperation with law enforcement, specifically that he consented to a search of his cell phone and his barracks room. He also wanted to highlight that he waived his Article 31(b), UCMJ, rights, did not request an attorney, and voluntarily agreed to be interviewed by NCIS special agents.

Appellant testified on direct examination that he was advised of his rights when he was brought to the NCIS office. His TDC then asked him, "Did you understand at that time you could have asked for a lawyer?"[28] The Government objected to this question. Appellant conceded to the military judge the statements were hearsay, though he did not concede the objection.[29] The military judge sustained the Government's objections to that question and the potential question of "Did you waive your Article 31(b) rights?" The military judge also did not allow Appellant to discuss how he "fully cooperated" with NCIS,[30] though this had already been specifically elicited from one of the NCIS special agents on cross-examination.[31] But the military judge did allow Appellant to offer evidence that he consented to a search of his phone and his room.[32]

Military Rule of Evidence [Mil. R. Evid.] 801(c) defines hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing" and is offered "in evidence to prove the truth of the matter

---

[26] *United States v. Dooley*, 61 M.J. 258, 263 (C.A.A.F. 2005) (citation and internal quotation marks omitted).

[27] *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014) (citation and internal quotation marks omitted).

[28] Record at 514.

[29] We do not consider this to be a waiver under *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). We also do not consider this concession to be ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) due to the lack of any prejudice.

[30] *Id*. at 521.

[31] *Id*. at 382-83.

[32] *Id*.

asserted in the statement."[33] Without an exception under the Military Rules of Evidence or other applicable federal statute, hearsay is not admissible.[34]

In this instance, despite Appellant's TDC concession that the questions called for hearsay, they did not. Appellant testifying that he waived his rights under Article 31(b) would merely be a statement describing a previous verbal act. No issue arises as to whether his out-of-court statement is true or not. The significance is merely that the verbal act was accomplished by virtue of the words being said. For the question of whether at the time of his interview Appellant knew he had the right to ask for a lawyer, this answer is also not hearsay. It does not call for an out-of-court statement from Appellant. The military judge abused his discretion by addressing the objection in the context of hearsay and ruling that the questions would elicit hearsay. The evidence would have been inadmissible on another grounds, but the military judge did not evaluate the evidence using the proper legal framework.

Nonconstitutional errors from an evidentiary ruling are reviewed "by weighing: '(1) the strength of the Government's case, (2) the strength of the [D]efense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'"[35] The Government's case was strong and relied on Appellant's own words and actions. His defense that he was law-abiding and cooperative with NCIS was of marginal value in explaining his words and actions. Even though the military judge sustained objections to these two questions, Appellant was still able to present evidence that he cooperated with NCIS. It was apparent that he consented to a search of his cell phone and his barracks room. Also, the members knew that, in the opinion of the NCIS special agent who interviewed him, Appellant was "cooperative."[36] With that, we can find no prejudice to Appellant.

Finally, Appellant asserts this alleged error prohibited the members from viewing the video of his NCIS interview. But this interview was never even offered at trial by either the Government or Appellant.

---

[33] Mil. R. Evid. 801(c).

[34] Mil. R. Evid. 802.

[35] *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

[36] Record at 382-83.

**C. Appellant's Constitutional Rights Were Not Violated When He Did Not Receive a Rights Warning Under *Miranda v. Arizona***

After NCIS special agents apprehended Appellant, they interviewed him. Appellant was advised of his rights under Article 31(b), UCMJ.[37] These include a suspect's right to be informed of the nature of the accusation, to be advised that he does not have to make any statements concerning the accusation, and that his statement may be used as evidence against him at a court-martial. The unique culture of the military can lead to "subtle," and sometimes not-so-subtle, "pressures which exist in military society"[38] on a service member to answer questions from a superior, or even a civilian in military law enforcement, such as an NCIS special agent.[39] Article 31(b) may be the most widely-litigated Article in the UCMJ. There is no doubt Appellant received an Article 31(b) rights advisement. But Appellant now argues he was also entitled to *"Miranda* rights" from the landmark Supreme Court case of *Miranda v. Arizona.*[40]

We review claims of constitutional error de novo.[41] Because this alleged error was never objected to at trial, it is forfeited.[42] Forfeited constitutional errors are reviewed for plain error.[43] A plain error is one that is "plain, or clear, or obvious" and "resulted in material prejudice to substantial rights."[44] If constitutional error is found, the Government "bears the burden of estab-

---

[37] 10 U.S.C. § 831(b) (2012).

[38] *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (quoting *United States v. Duga*, 10 M.J. 206, 209 (C.M.A. 1981)).

[39] *United States v. Oakley*, 33 M.J. 27, 31 (C.A.A.F. 1991) (citing *United States v. Penn*, 39 C.M.R. 194 (U.S.C.M.A. 1969)).

[40] 384 U.S. 436 (1966).

[41] *United States v. Busch*, 75 M.J. 87, 91 (C.A.A.F. 2016) (citing *United States v. Castillo*, 74 M.J. 160, 165 (C.A.A.F. 2015)).

[42] *United States v. Vazquez*, 72 M.J. 13, 17 (C.A.A.F. 2018) (citing *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008)).

[43] *United States v. Barrazamartinez*, 58 M.J. 173, 175 (C.A.A.F. 2003) (citing *United States v. Powell* 49 M.J. 460 (C.A.A.F. 1998)).

[44] *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017) (citation and internal quotation marks omitted).

lishing that any constitutional error is harmless beyond a reasonable doubt."[45]

The Supreme Court's 5-4 decision in *Miranda* created a new right not previously found in the Fifth Amendment and applied it to the states.[46] Ernesto Miranda confessed to Arizona police that he kidnapped and raped an 18-year-old woman. But his confession was made without an attorney present. Because of this, the Court overturned his conviction and held that statements obtained during custodial interrogations were inadmissible unless, prior to questioning, a person in custody was "informed in clear and unequivocal terms that he has the right to remain silent"[47] and he was given an "explanation that anything said can and will be used against the individual in court."[48] Just two years after *Miranda*, Congress enacted 18 U.S.C. § 3501 as part of a large omnibus crime bill,[49] to restore an individual test of "voluntariness" to confessions.[50] The U.S. Department of Justice, beginning in the mid-1990s, "steadfastly refused to enforce the provision" before asserting "without explanation, that the provision [was] unconstitutional."[51] The statute was considered by the Supreme Court in *Dickerson v. United States*.[52] A divided Court held that *Miranda* prevailed over Congressional authority largely because *Miranda* was "embedded in routine police practice" and had become "part of our national culture."[53]

---

[45] *United States v. Simmons*, 59 M.J. 485, 489 (C.A.A.F. 2004) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

[46] *See, e.g.*, *Miranda*, 384 U.S. at 491-99; *Stansbury v. California*, 511 U.S. 318 (1994); *Minnick v. Mississippi*, 498 U.S. 146 (1990); *Arizona v. Roberson*, 486 U.S. 675 (1988); *Edwards v. Arizona*, 451 U.S. 477 (1981).

[47] *Miranda*, 384 U.S. at 467-68.

[48] *Id.* at 469.

[49] Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351, 82 Stat. 197 (codified at 34 U.S.C. § 10101 *et seq.*).

[50] Pub. L. No. 90-351, Title II, § 7-1(a), 82 Stat. 210 (June 19, 1968) (codified at 18 U.S.C. § 3501).

[51] *United States v. Dickerson*, 166 F.3d 667, 671 (4th Cir. 1999), *rev'd*, *Dickerson v. United States*, 530 U.S. 428 (2000).

[52] 530 U.S. 428.

[53] *Id.* at 443.

None of this legal, social, or political upheaval impacted military justice. Article 31(b) warnings predated *Miranda*[54] and was a statute rather than a judicial creation. Article 31(b) warnings actually offer more protections for an accused than do the *Miranda* warnings.[55] Any *Miranda* warnings Appellant would have received would have been superfluous. *Miranda* warnings are also only for those who are in "custodial interrogation."[56] When he was interviewed by NCIS and made his statements, Appellant was not then in custody and was free to go at any time. Finally, generally speaking, *Miranda* warnings are for civilian courts and Article 31(b) warnings are for courts-martial.[57] And, most notably, the Government did not even offer Appellant's statements to NCIS as evidence at trial, and they were not admitted. We find no error.[58]

## D. Appellant's Trial Defense Counsel Was Not Ineffective

This court reviews claims of ineffective assistance of counsel de novo.[59] When reviewing such claims, we follow the two-part test outlined in *Strickland v. Washington*.[60] "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[61]

---

[54] Article 31 was ratified as part of the new Uniform Code of Military Justice in 1950, replacing the Articles for the Government of the Navy and the Army's Articles of War. The form of the right to remain silent during an investigation, or to have a rights advisement, reaches back to the 1948 legislation amending the Articles of War, popularly known as the Elston Act. Selective Service Act of 1948, Pub. L. No. 80-759 §§ 201-46, 62 Stat. 604, 627-44 (1948), and even further to Article of War 24 enacted in 1916. Act of August 29, 1916, Pub. L. No. 64-242, § 3, 39 Stat. 654.

[55] *See, e.g.*, *United States v. Baird*, 851 F.2d 376, 383 (D.C. Cir. 1988) ("The protections of Article 31(b) are broader than *Miranda* warnings in that a suspect must receive warnings even if the suspect is not in custody.").

[56] *Miranda*, 384 U.S. at 467-68.

[57] *United States v. Newell*, 578 F.2d 827, 832-33 (9th Cir. 1978) (Article 31(b) "do[es] not purport to apply to federal court proceedings.")

[58] In addition, we find that any possible failure to object to a lack of a *Miranda* warning by Appellant's TDC was not ineffective assistance of counsel.

[59] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

[60] 466 U.S. 668, 687 (1984).

[61] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

Appellant makes three separate allegations of ineffective assistance of counsel. Two involve a Defense expert assistant in forensic psychology who conducted a forensic examination of Appellant, to include a polygraph examination. Appellant argues his TDC was ineffective when he failed to offer the expert assistant's opinion that Appellant's interview with the NCIS special agents was coercive. He also argues his TDC was ineffective when he failed to offer the results of the polygraph examination. Finally, Appellant argues his TDC was ineffective when he did not attempt to elicit testimony from one of the NCIS special agents who, soon after apprehending Appellant, told him he did not believe he was a "bad person," and also told Appellant's co-workers he did not believe Appellant was a "pedophile" but merely an "opportunist."[62]

We need not determine "whether counsel's performance was deficient . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice."[63] "When a claim for ineffective assistance of counsel is premised on trial defense counsel's failure to move the court to take some action, "an appellant must show that there is a reasonable probability that such a[n] [action] would have been meritorious."[64] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[65] "Failure to raise a meritless argument does not constitute ineffective assistance."[66] These actions, if they had been taken, would not have been meritorious, nor was their absence prejudicial to Appellant.

*1. The failure to introduce the expert's opinion that the NCIS interview was "coercive" was not prejudicial.*

Appellant argues his TDC was ineffective because he failed to offer the expert assistant's opinion that the NCIS special agents coerced Appellant during his interview. Even if that were the case—and Appellant never explains what the special agents did to "coerce" him—the evidence of his misconduct was in his online messages to Marie, his possession of the treats she requested, and his appearance at the designated place and time. Even if

---

[62] Appellant's Br. at 23.

[63] *Strickland*, 466 U.S. at 697.

[64] *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)).

[65] *Strickland*, 466 U.S. at 694.

[66] *Napoleon*, 46 M.J. at 284 (quoting *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).

Appellant's strategy at trial was to rebut some of his statements during the interview by arguing coercion or "false confession," this required Appellant's statements to be admitted into evidence by the military judge. They were not in this case. A TDC cannot be ineffective for failing to rebut evidence that was never offered by the Government in the first place. We find no possible prejudice to Appellant.

### 2. *The failure to introduce the polygraph report was not prejudicial*

Appellant's expert assistant conducted a polygraph examination. Under Military Rule of Evidence 707, polygraph examinations are generally inadmissible for the simple reason that they are unreliable as indicators of whether someone is telling the truth. Scientifically speaking, for a finder-of-fact ascertaining the veracity of a statement, a polygraph machine may as well be an office copier. Worse still, results from a polygraph examination can be dangerously misleading if given the imprimatur of scientific accuracy.

In some circumstances, this kind of evidence may be admitted, such as when "the facts and circumstances of a polygraph examination procedure [are] offered to explain the reason or motivation for a confession."[67] For example, an accused may reference how the Government's administered polygraph examination indicated "deception," which led the accused to make a false confession. That is because it provides context for the confession and the accused's motivation for making the statements at issue, by directly attacking the accuracy of the polygraph. The purpose behind the Rule is to keep a fact-finder from relying on a polygraph for the truth of its result instead of the evidence presented.

Here, it appears Appellant wanted to offer the results of his polygraph to show "no deception" for (1) whether he had sexual contact with any other minors, (2) whether he was being deceptive about any other illicit sexual behavior he was asked about during the exam, and (3) whether he committed "any other sex crimes."[68] The second and third question are of no relevance. The first question may be probative of Appellant's lack of predisposition in advancing his entrapment defense. But even if it were, the admission of the polygraph results to bolster his own testimony is still impermissible because it presupposes and advances the reliability of the results of the polygraph examination.

---

[67] *United States v. Kohlbek*, 78 M.J. 326, 329 (C.A.A.F. 2019).

[68] Appellant's Br. at 23.

In *United States v. Wheeler*,[69] we held the military judge abused his discretion by prohibiting appellant from introducing evidence concerning the results of multiple polygraph examinations. They were used as an "investigatory tool"[70] leading to, what appellant claimed, was a false confession. Because "the appellant's understanding and perception of those polygraph examinations [were] important factual matters related to his confession"[71] we held that that he had the right to represent evidence attacking the voluntariness of his statements.

We not only find Appellant's TDC was not ineffective to fail to move for its admission, but we also find that even if it had been (wrongly) admitted, it would have had little to no relevance or impact on the members. The issue was whether he had attempted to sexually assault and sexually abuse a specific purported child, not whether he sexually abused other children.

*3. The failure to cross-examine a Government witness about his opinion of Appellant was not prejudicial*

One of the NCIS special agents is alleged to have told Appellant's coworkers that he did not think Appellant was a "pedophile" but was rather "an opportunist." The same special agent told Appellant he did not believe he was a "bad person." Appellant asserts his counsel was ineffective for not eliciting this testimony. We disagree.

There was no basis for the military judge to allow the special agent to answer these questions if the basis was to offer character evidence on behalf of Appellant. Law enforcement agents say a lot of things to suspects and witnesses. Most of the time, agents are trying to get a suspect or a witness to disclose information—such as in the famous "Christian burial case."[72] Even if this evidence qualified as "good military character" evidence—and it clearly was not—it would have been inadmissible under Military Rule of Evidence 404(a)(2)(vii), which prohibits use of such evidence for attempts to commit an offense under Article 120, UCMJ. And even if this were offered for general good character and not specifically good military character, the witness would still have lacked the necessary foundation due to the special agent having not had sufficient opportunity to observe Appellant and form any kind of relevant

---

[69] 66 M.J. 590 (N-M. Ct. Crim App. 2008).

[70] *Id.* at 595.

[71] *Id.*

[72] *Brewer v. Williams*, 430 U.S. 387 (1977); *Nix v. Williams*, 467 U.S. 431 (1984).

opinion of him. And for that reason, the omission of this evidence, even if improper, would not undermine our confidence in the outcome, so there is no prejudice from its omission. Even if this was actually the special agent's genuine opinion of Appellant—which is highly unlikely—it would have carried little to no weight with any of the members due to its non-existent foundation.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined the approved findings and sentence are correct in law and fact and find no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59, 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**

Senior Judge TANG and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court